**Joseph MALLON, God,**

v.

**Honorable John R. PADOVA.**

**Joseph MALLON, God,**

v.

**HARVARD LAW SCHOOL.**

**Joseph MALLON, God,**

v.

**PHILADELPHIA.**

**Joseph MALLON, God,**

v.

**PENNSYLVANIA REAL ESTATE COMMISSION.**

**Joseph MALLON, God,**

v.

**PRETENDERS.**

**Joseph MALLON, God,**

v.

**CHEVAL MUSIC.**

**Joseph MALLON, God,**

v.

**UNITED STATES PRESIDENCY of GEORGE BUSH.**

**Joseph MALLON, God,**

v.

**The HYNDES.**

**Joseph MALLON, God,**

v.

**THE PEOPLE OF ENGLAND.**

**Joseph MALLON, God,**

v.

**Chrissie (Hynde) MALLON.**

**Joseph MALLON, God,**

v.

**UNITED STATES.**

**Civ. A. Nos. 92–5825, 92–5885 to 92–5887, 92–5889, 92–5890, 92–5982, 92–5891 to 92–5893 and 92–5981.**

United States District Court,
E.D. Pennsylvania.

Nov. 17, 1992.

Joseph Mallon, pro se.

Herbert G. Keene, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for U.S. Presidency of God.

## MEMORANDUM

ROBRENO, District Judge.

Presently before me are eleven separate complaints filed by Mr. Joseph Mallon. For the reasons that follow, each of the complaints will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(d). I also find that Mr. Mallon, unless restrained, will continue to abuse the judicial process by filing additional frivolous actions. I will, accordingly, issue a permanent injunction, under the All Writs Act, 28 U.S.C. § 1651, precluding Mr. Mallon from filing further actions without prior approval from this Court.

## I. BACKGROUND

Mr. Mallon, acting *pro se* and *in forma pauperis*, filed the eleven complaints now before me during a period from October 8, 1992 to October 16, 1992.[1] After reviewing

1. Mr. Mallon has filed three actions other than those now before me. The first, an action against the United States of America filed by Mr. Mallon on June 3, 1992 (Civil Action 92–

the complaints and various other materials submitted to the Court by Mr. Mallon in connection with these lawsuits, I issued a temporary restraining order ("TRO") on October 26, 1992, 806 F.Supp. 1186. The TRO precluded Mr. Mallon, for a period of ten days, from filing additional lawsuits without prior approval of the Court. The TRO was based on my finding that Mr. Mallon was "intentionally abusing the judicial system and [would] continue to do so unless restrained...." October 26 Memorandum and Order, 806 F.Supp. at 1188.[2] That same date, I also scheduled a hearing for November 3, 1992 on whether the injunction imposed by the TRO should be made permanent. Finally, on that same date I appointed Mr. Herbert G. Keene, Jr., Esquire, of the law firm of Stradley, Ronon, Stevens & Young, to represent Mr. Mallon's interests on the question of whether a permanent injunction should issue.

Mr. Keene and Mr. Mallon appeared at the November 3, 1992 hearing, and the Court heard argument from both. Mr. Mallon also submitted various exhibits for the Court's review. At the conclusion of the hearing, finding that the circumstances that initially justified the TRO had not changed, I ordered that the TRO be extended for an additional ten day period. *See* Fed.R.Civ.P. 65(b). After consideration of the memorandum submitted by Mr. Keene, the argument of both Mr. Keene and Mr. Mallon, and, most importantly, the pleadings and other papers submitted by Mr. Mallon, I now dismiss the complaints as frivolous under 28 U.S.C. § 1915(d). I also find that the injunction imposed by the TRO should be made permanent.

## II. DISCUSSION

### A. *Frivolity*

■ The Court will dismiss as frivolous each of the eleven complaints now pending. I attach hereto an Appendix describing each of the eleven cases. A review of the case descriptions in the Appendix demonstrates the clear frivolity of Mr. Mallon's actions; for purposes of this Memorandum, a summary will suffice.

Summarizing Mr. Mallon's complaints is difficult because there is no common factual thread running between them. A few general themes, however, can be detected. Mr. Mallon signs most of his complaints as "Honor Holiness God (Judge of God's Court) President Joseph Mallon." He

3242), was dismissed by the Honorable Harvey Bartle, III on September 3, 1992 pursuant to the grant of a motion to dismiss the complaint. After that dismissal, Mr. Mallon filed one action against Judge Bartle and the United States District Court (Civil Action 92–5226), and a separate action against the United States Attorney for the Eastern District of Pennsylvania (92–5227). These latter actions were dismissed as frivolous by the Honorable John R. Padova on September 28, 1992. Mr. Mallon has appealed all three dismissals to the United States Third Circuit Court of Appeals. Those appeals are still pending. Additionally, it appears that some of the claims now before me were raised as part of Mr. Mallon's initial lawsuit against the United States. It is also worth noting that the docket reflects that Mr. Mallon made approximately sixty separate filings in connection with that initial lawsuit.

**2.** Specifically, the TRO reads as follows:
Plaintiff Joseph Mallon is hereby temporarily restrained from filing any papers purporting to initiate new claims without approval of this Court. The Court will consider granting such approval only upon Mallon's filing of a certification or attestation that: a) the claims he wishes to present are new claims, never before raised and disposed of on the merits by any federal court, b) Mallon believes the facts alleged in the complaint to be true, and c) Mallon knows of no reason to believe that his claims are foreclosed by controlling law. Mallon may be subject to punishment by contempt if he initiates a new action without such certification or submits a false certification. Order, October 26, 1992. The Court's accompanying memorandum stated that the TRO was being issued, *inter alia,* on the authority of the principles of law set forth by the Third Circuit in *Abdul–Akbar v. Watson,* 901 F.2d 329, 332 (3d Cir.); *In re Matter of Packer Avenue Associates,* 884 F.2d 745 (3d Cir.1989); and *In re Oliver,* 682 F.2d 443, 446 (3d Cir.1982), all of which stated that an injunction precluding the filing of future actions was permissible under appropriate circumstances. *See* October 26, 1992 Memorandum and Order, *supra.*

claims to be the "possessor" of "a valid U.S. Presidency" and that various entities have refused to "regard" his presidency. He also states that he owns "God's Holy Cross," and makes frequent references to it throughout his pleadings. Mr. Mallon also claims that God's Holy Cross should be on the American flag, and has attached to several pleadings what appears to be a color photocopy of a picture of an American flag with a cross on it.

Most, if not all, of the complaints involve an entity that has not "dealt with" or "regarded" Mr. Mallon. It appears as if Mr. Mallon has previously sent many of the defendants various communications, and that the defendants have ignored them. Mr. Mallon, for example, has sued Harvard Law School, claiming that various communications that he has written to Harvard were sent back. Mr. Mallon claims that he has performed various other unspecified "law work" that Harvard "has a duty to deal with...." [3] In another suit, Mr. Mallon has sued Ms. Chrissie Hynde, a well known rock music performer and leader of the rock band called "The Pretenders." Mr. Mallon alleges that Ms. Hynde is his wife, and he brings claims against her on the grounds that she doesn't "communicate" with him, that she is "too far away," and that she is not "doing her part." Mallon has also sued, in separate actions, The Pretenders and Ms. Hynde's parents, claiming, *inter alia,* that they did not "deal with" communications from Mr. Mallon. Other defendants sued by Mr. Mallon include the President of the United States and "the People of England." In connection with his various complaints, Mr. Mal-

lon has also submitted various "songs" that he has written, as well as assorted essay-type documents such as "President Joseph Mallon's Wednesday, August 7, 1991 Presidential Speech Dealing With Marijuana and Drugs," "President Joseph Mallon's Monday, September 16, 1991 Presidential Speech Dealing With Important Music Matters," "President Joseph Mallon's Wednesday, October 16, 1991 Presidential Speech Dealing With Rock and Roll," and "Some Dreams I, GOD, President Joseph Mallon, Had Involving My Wife, Chrissie (Hynde) Mallon."

Suffice it to say that the complaints are quite devoid of any merit. A complaint may be dismissed as frivolous under 28 U.S.C. § 1915(d) if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). "[T]he term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* To conclude that Mr. Mallon's complaints are factually "fanciful" is an understatement.[4] Further, insofar as true factual averments can be culled from the complaints, Mr. Mallon has, to a large extent, alleged simply that the various defendants have failed to communicate with him. No circumstances have been plead which could possibly create in the defendants a duty to communicate with Mr. Mallon. Accordingly, all the complaints lack an arguable basis in both law and fact, and will be dismissed pursuant to § 1915(d).[5]

### B. *Permanent Injunction*

It is well accepted that the All Writs Act, 28 U.S.C. § 1651(a), authorizes district

---

**3.** At the hearing, Mr. Mallon stated that he has attended law school, although not at Harvard.

**4.** One exception to that generalization may be found in Mr. Mallon's claim against Judge Padova. Mr. Mallon's complaint in that action states that Judge Padova dismissed Mr. Mallon's cases that had been pending before Judge Padova (*see* note 1, *supra*) without giving Mr. Mallon an opportunity to be heard. Although not stated, Mr. Mallon may be attempting to state a cause of action under 42 U.S.C. § 1983. It is, in fact,

true that Judge Padova dismissed two of Mr. Mallon's complaints as frivolous pursuant to § 1915(d); Judge Padova, however, *is entitled to absolute immunity from suit for his judicial actions. See Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (absolute immunity under Section 1983 for judges performing judicial functions). This action, therefore, is devoid of legal merit.

**5.** Leave to proceed *in forma pauperis* will be granted in all cases.

courts to, among other things, restrict the access to federal courts of parties who repeatedly file frivolous litigation. *See Abdul–Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir.), *cert. denied*, 498 U.S. 806, 111 S.Ct. 237, 112 L.Ed.2d 196 (1990). The Third Circuit has approved the issuance of "an injunction to require litigants to obtain the approval of the court before filing further complaints." *Id.* An injunction that limits a party's access to the court, however, "is an extreme remedy which must be narrowly tailored and sparingly used." *Id.* (quotation and citation omitted).

■ Mr. Mallon's appointed counsel[6] sets forth three significant arguments in opposition to the issuance of a permanent injunction. First, counsel argues that the reported cases approving an injunction of the type now at issue generally involve situations in which the plaintiff ignores principles of *res judicata* by repeatedly seeking to relitigate claims that were already the subject of litigation in which a final judgment has been entered. Counsel correctly notes that the Court's proposed injunction, in contrast, would preclude Mr. Mallon from filing *any* action without court approval, regardless of whether the action related to a previously filed claim.

It is indeed true that injunctions against future filings have often been drafted so that they serve only to preclude relitigation of claims relating to issues that had previously been decided. *See, e.g., In re Matter of Packer Avenue Associates*, 884 F.2d 745 (3d Cir.1989); *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir.1980). The Third Circuit, however, has not *required* that injunctions designed to restrict court access be limited in such a fashion. To the contrary, this Circuit has stated that a broader injunction may be issued in appropriate circumstances. In *Chipps v. United States District Court for the Middle District of Pennsylvania*, 882 F.2d 72, 73 (3d Cir. 1989), the Court noted that:

> Though *a district court has the authority to require court permission for all subsequent filings once a pattern of vexatious litigation transcends a particular dispute*, we conclude that *on the present record*, the scope of the District Court's order should be limited [to the dispute at issue].

(emphasis added). Similarly, the Court in *In re Oliver*, 682 F.2d 443 (3d Cir.1982), while invalidating an injunction for failure to provide the plaintiff with an opportunity to contest the action,[7] otherwise approved of an Order directing the Clerk of the Western District of Pennsylvania to "accept no further case for filing from Mr. Oliver, absent a specific Order from a Judge of this Court." *Oliver*, 682 F.2d at 445. The *Oliver* Court noted that "[i]n appropriate circumstances, courts have gone beyond prohibitions against relitigation and enjoined persons from filing any further claims of any sort without the permission of the court." *Id.*

Mr. Mallon's complaints clearly "transcend a particular dispute" in that their factual allegations bear no apparent relationship to each other. An injunction that was limited to precluding Mr. Mallon from filing future complaints that have some relation to the actions now pending would have no practical preclusive effect, since Mr. Mallon has already demonstrated his penchant for filing complaints stemming from a multitude of unrelated matters. Accordingly, in light of the foregoing authorities, the Court concludes that there is no *per se* prohibition in this Circuit against enjoining *all* further filings without court approval.[8]

■ Whether this matter presents the "appropriate circumstances" necessary to

---

**6.** The Court expresses its sincere appreciation to Mr. Keene and the law firm of Stradley, Ronon, Stevens & Young for their *pro bono* assistance to Mr. Mallon and for their handling of this sensitive matter in an expedited, helpful and professional fashion.

**7.** This Court satisfied this notice requirement by holding the November 3, 1992 hearing and by allowing counsel and Mr. Mallon to raise opposition to the injunction.

**8.** For a list of cases approving of injunctions requiring litigants "to seek leave of court before filing pleadings in any new or pending lawsuit," *see Procup v. Strickland*, 792 F.2d 1069, n. 5 (11th Cir.1986) (citing cases).

justify a broad injunction goes to counsel's second argument. Counsel maintains that Mr. Mallon has not demonstrated "a continuing abuse of process," and that "there is no evidence to support this Court's determination that [Mr. Mallon's] filings will continue if this Court addresses the substance of Mr. Mallon's complaints." Memorandum of Joseph Mallon in Opposition to Permanent Injunction, at 5. Counsel argues that in the event Mr. Mallon does file any frivolous complaints in the future, those complaints could easily be dismissed under 28 U.S.C. § 1915(d) so that the more drastic injunctive remedy is not necessary.

The Court does not agree. Mr. Mallon has filed fourteen patently baseless lawsuits in this Court in the span of five months. *See* note 1, *supra.* In connection with one of those suits, Mr. Mallon made approximately sixty separate filings before the complaint was dismissed. The eleven cases now before me were filed during an eight day period. Mr. Mallon has filed a multitude of incomprehensible pleadings in these eleven cases. Many of these pleadings were submitted even after the entry of the TRO. Although these pleadings are technically not in contravention of the TRO because they did not purport to initiate new actions, that Mr. Mallon found it necessary to submit so many post-TRO documents leads the Court to conclude that future restraint will be necessary. The fact that Mr. Mallon sued Judge Bartle for dismissing his case against the United States, and has now sued Judge Padova for dismissing Mr. Mallon's case against Judge Bartle, further confirms Mr. Mallon's litigious propensities.[9]

█ Dismissal under § 1915(d) is an inadequate solution in situations such as that now presented. As the Third Circuit has stated:

> [A] frivolous complaint is one thing; a continuing abuse of process is another. In the case of the latter, section 1915(d) alone is not an efficacious remedy. When a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, we believe it is entitled to resort to its power of injunction and contempt to protect its process.

*Abdul–Akbar,* 901 F.2d at 333. Accordingly, if it is convinced that there is a substantial likelihood that a litigant will continue to file frivolous lawsuits, a district court is not required to sit idly by and allow a party to waste precious judicial resources simply because each action could be individually dismissed at an early stage in the proceedings pursuant to § 1915(d).

█ The Court is more sympathetic to counsel's last argument stemming from sensitivity to Mr. Mallon's apparent psychological condition. Noting that the Court's proposed injunction would allow Mr. Mallon to submit for the Court's approval actions that Mr. Mallon believes to be "true" and "not foreclosed by controlling law," counsel argues that these requirements "will not prevent or deter [Mr. Mallon] from bringing suits which he *subjectively* believes are meritorious and are necessary to vindicate his interests." Memorandum of Joseph Mallon in Opposition to Permanent Injunction, at 3 (emphasis added). Because Mr. Mallon may well believe that the allegations he raises are actually true, counsel argues that the injunction is unnecessary since it will not limit the number of complaints submitted by Mr. Mallon, but, rath-

---

9. Also relevant is the following colloquy that took place between the Court and Mr. Mallon at the November 3, 1992 hearing:

THE COURT: ... Are you planning to file any additional actions in this Court?

MR. MALLON: In regard to these matters involved?

THE COURT: Yes.

MR. MALLON: No. Something would have to happen to make that cause be necessary.

THE COURT: Such as what?

MR. MALLON: *Some kind of wrong that would justify a grounds for a law case.*

Transcript from November 3, 1992 Hearing, p. 26 (emphasis added). Given that the stated "grounds" in support of Mr. Mallon's existing actions are spurious, the Court has no reason to believe that Mr. Mallon will not continue to bring suit over whatever "wrong" he may perceive in the future based on similarly spurious grounds.

er, will only serve to require that his complaints be pre-approved by a judge of this Court prior to filing rather than dismissed after filing under § 1915(d).

▉ While this may well be a possible outcome of this Court's proposed injunction, counsel's argument misperceives the prophylactic purpose underlying injunctions of this nature. Simply put, the Court will not permit the expense of its limited resources and the abuse of its process per chance that an abusive litigant *might* possibly file a non-frivolous lawsuit. Whether the frivolous filing is motivated by malice or is the result of a litigant's fragile hold on reality, the result of the unabated abuse is the same, i.e., an inevitable decline of public confidence in the court's ability to run its own affairs fairly and efficiently. Concern for the integrity of the court has provided a partial basis for decisions in which courts have approved of injunctions of this nature. *See, e.g., Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I.1962) (injunction against filings imposed, in part, "in order to protect the records of this Court from frivolous irrelevant, vexatious, superfluous and unimportant papers"); *Procup, supra,* note 9 (district courts can limit access to judiciary because they have "both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions"; also stating that "[t]he court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others."). *Cf. In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir.1992) (addressing, in the context of disqualification of judges, the importance of the public's confidence in the judiciary).[10]

### III. CONCLUSION

For the foregoing reasons, the Court finds that the complaints at issue must be dismissed as frivolous pursuant to 28 U.S.C. § 1915(d), and that the injunction imposed by the previously issued temporary restraining order should be made permanent. An appropriate Order will be entered.[11]

### ORDER

AND NOW, TO WIT, this 17th day of November, 1992, IT IS ORDERED that:

1. Leave to proceed *in forma pauperis* is granted in all cases.

2. All of the above captioned matters are dismissed as frivolous pursuant to 28 U.S.C. § 1915(d).

3. The temporary restraining order issued on October 26, 1992, as extended for a period of 10 days by Order of November 3, 1992, is hereby made permanent. Accordingly, Plaintiff Joseph Mallon is hereby permanently enjoined from filing any documents in this Court without the approval of the Court. The Court will consider granting such approval only if Mr. Mallon includes with any submission to the Court a certification or attestation that: a) the claims he wishes to present are new claims, never before raised and disposed of on the merits by any federal court, b) Mr. Mallon believes the facts alleged in the complaint to be true, and c) Mr. Mallon knows of no reason to believe that his claims are foreclosed by controlling law. Mr. Mallon may be subject to punishment by contempt if he submits any document without such certification or submits a false certification.

4. The Clerk is directed to mark any papers submitted by Mr. Mallon as "Received," and shall direct same to my attention. In the event that I approve of the

---

**10.** Counsel's argument would be more properly directed to the issue of whether Mr. Mallon should be sanctioned for contempt if he violates the injunction after it is entered. The Court recognizes that the absence of malice or vexatious intent on the part of Mr. Mallon may be very relevant in determining the extent to which Mr. Mallon should be punished if he violates the terms of the permanent injunction. These considerations, however, have no bearing on the Court's need to protect the integrity of its process.

**11.** Needless to say, the injunction imposed today will be dissolved in the event that Mr. Mallon, upon application to this Court, can demonstrate, some time in the future, a change in circumstances sufficient to justify such a dissolution.

commencement of a new action, I will forward the complaint and other supporting papers to the Clerk for assignment in accordance with the same procedure that would govern the random assignment of Court cases.

5. Mr. Herbert G. Keene, Jr. and the law firm of Stradley, Ronon, Stevens & Young, having been appointed by this Court to represent Mr. Mallon's interests on the issue of whether the temporary restraining order should become permanent, are hereby relieved of all responsibilities with regard to legal representation of Mr. Mallon.

6. The injunction imposed today shall not operate to preclude Mr. Mallon from filing a notice of appeal with regard to any provisions of this Order.

## APPENDIX

92–5825 *Mallon v. Judge Padova.* Mr. Mallon alleges that Judge Padova "dismissed [Mallon's] complaint without [Mallon] getting a chance to say anything about it." He claims that Judge Padova was "not regarding my serious and factual statements" and dismissed the complaint without "freedom of speech" and "due process."

92–5885 *Mallon v. Harvard Law School.* Mr. Mallon makes vague references to certain "law work" that he has done, and says that Harvard has a duty to deal with his law work. He claims to have written a law book that Harvard is somehow ignoring. He also states that he attended law school at one point, and that various work needs to be done concerning his "lawyer's license."

92–5886 *Mallon v. Philadelphia.* Mr. Mallon claims that the City has not dealt with his God's Miracle Cross, and that it didn't respond to his February, 1984 communication to the City. He claims that the Mayor did not properly earn his position. He claims that the City caused property in Philadelphia "to be regarded as not belonging to plaintiff." He also claims that the 1991 mayoral election was invalid.

92–5887 *Mallon v. Pennsylvania Real Estate Commission.* Mr. Mallon says that he sent reports of "valuable real estate" to the Commission, but that it has failed to deal with the reports appropriately. He states that in March of 1985, a representative of the Commission visited the property, but didn't grant him the relief he wanted. It's not clear whether Mr. Mallon is or was the owner of the property that he is referring to. Mr. Mallon also says that the Commission is somehow interfering with his valid real estate license.

92–5889 *Mallon v. The Pretenders.* Mr. Mallon claims that the Pretenders did not "deal with" a communication to them. He also claims they injured him by moving to England.

92–5890 *Mallon v. Cheval Music.* Defendant allegedly "misdealt" with important communications. Mr. Mallon states: "The person who the communication was specifically to, a famous celebrity, did not even once communicate back to the plaintiff in regard to any aspect of any of the very important communication sent to the defendant acting as the celebrity's agent and sole source of reasonable communication...."

92–5891 *Mallon v. The Hyndes [Parents of Chrissie [Hynde] Mallon].* Mr. Mallon has sued the parents of Chrissie Hynde, alleging that they "cut off all postal service communication and telephone communication from me to Akron, Ohio," and also England, where Chrissie Hynde was residing. He says that he wrote a book that he sent to "his wife" by way of Akron, but that the book was sent back without "being dealt with."

92–5892 *Mallon v. People of England.* Mr. Mallon says that the people of England "were outrageously unreasonable and caused a very bad situation" and that they "excessively did not deal with anything pertaining to me when there was a lot that had to be and was supposed to be dealt with." He says

they were involved with terrorism and showed no "reasonableness."

92–5893 *Mallon v. Chrissie (Hynde) Mallon.* Mr. Mallon alleges that Ms. Hynde is his wife, and that she has failed to deal with him. He says that Hynde is "not doing her part," that she is "too far away," and that she "didn't communicate" with him. He states that "I demand all that she is, and has, as a very minimum of at least that, and plus, I demand my children from her, too; in other words, I demand as compensation, all of my wife's and our—my children's possessions, life, and even rights, and I have to own and possess all that is of my wife and children."

92–5981 *Mallon v. United States.* Mr. Mallon claims that the United States has failed to deal with him. He states that the recent presidential debates "caused me damage because instead of me being dealt with, I was still left out in the middle of nowhere...." He says he must be dealt with because of, among other things, his United States Presidency, his "law work," and his law cases in this Court.

92–5982 *Mallon v. United States Presidency of George Bush.* Mr. Mallon says that President Bush did not carry out his presidency properly, and that President Bush has not dealt with Mr. Mallon's U.S. presidency. He says the White House has not responded to his communication, and President Bush "has not been properly regarding the reality of my GOD'S MIRACLE CROSS and the fact of me being God." He also seeks to impeach President Bush, citing incidents involving taxes and the war in Kuwait.