Chad Gabriel **DEKOVEN**, a/k/a "Messiah–God" # 145274, Plaintiff,

v.

Art **BELL**, Mike Seigel, Whitley Streiber, Ian Punnett, Premier Radio Network, Supreme Council Ancient Accepted Scottish Rite of Free Masonry, Simon and Schuster, United States of America, Great Britain, U.K., Northern Ireland, State of Michigan, Aish Ha Torah, and Nation State of Israel, Defendants.

No. 01–10124–BC.

United States District Court, E.D. Michigan, Southern Division.

April 26, 2001.

Chad Gabriel Dekoven, Grand Rapids, MI, pro se.

## OPINION AND ORDER SUMMARILY DISMISSING PLAINTIFF'S COMPLAINT [1]

LAWSON, District Judge.

Before the Court is plaintiff's complaint seeking relief from a variety of governmental and non-governmental entities [2] for wrongs committed against the plaintiff, Chad Gabriel DeKoven, a/k/a Messiah–God # 145274,[3] due to the failure of these defendants to acknowledge, accept and act on plaintiff's claim that he is the "God–Messiah" of the Holy Bible.[4] The plaintiff is presently a prisoner at the Standish Maximum Correctional Facility in Standish, Michigan. He has paid the entire filing fee of $150, rendering inapplicable the authority to screen such complaints for frivolity or maliciousness under a portion of the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2). However, the Court has an initial and continuing obligation under Fed.R.Civ.P. 12(b)(1) to review and dismiss cases in which the Court lacks subject matter jurisdiction. Because the Court finds that the complaint is patently frivolous, implausible, unsubstantial and devoid of merit, the Court determines that it lacks subject matter jurisdiction over this "controversy" and will, therefore, dismiss the complaint *sua sponte*.

### I.

The plaintiff's 125 page complaint, accompanied by over eighty pages of exhibits, contains several statements and allegations of fact of varying degrees of plausibility. Some of plaintiff's allegations are about events he claims to have experienced or observed in prison. Some of these allegations set forth arguable claims of violations of someone's constitu-

---

1. The Court acknowledges the valuable contribution and assistance of staff attorney Martin Cadwell in completing this opinion.

2. The named defendants include the following individuals and entities: Art Bell, Mike Seigel, Whitley Streiber, Ian Punnett (all employed by or affiliated with Premier Radio Networks), Premier Radio Networks, Supreme Council of Ancient Accepted Scottish Rite of Free–Masonry–Northern Masonic Jurisdiction, Simon and Schuster (a publishing company), United States of America, United Kingdom of Great Britain and Northern Ireland, State of Michigan, Aish Ha Torah, and the Nation–State of Israel.

3. Plaintiff claims to have been known by over fifty other names throughout history, including, Osiris, Ra, Yahweh, Lucifer, The Lamb, Jesus, Jesus Christ, Moses, The Creator, Allah, Satan, Zeus, Abraxas, Apollo, Hercules, Jupiter, Romulus and Remus, Dracula, The President, Job, Noah, Quetzalcoatl, Dionysus, Dakota Belzadok, and others. See plaintiff's Appendix B. According to plaintiff, he is forty-three years old, was named Daniel Martin Frizzle at birth, and changed his name as an adult to Chad Gabriel Dekoven, a change which he characterizes as "arbitrary and random." Complaint at 15.

4. Plaintiff has set forth this allegation in his Statement of Facts. Plaintiff also notes that he has "attempted over a hundred times to explain to psychiatric staff that Plaintiff was the Jewish Messiah for real, and had evidence to support it, Plaintiff even gave them hundreds of pages of codes, those staff never even read the codes or asked the Plaintiff any questions about them, they just said a lot of blasphemous stuff and said the Plaintiff was 'Delusional' Schizo-affective etcetera etcetera." Complaint at 79.

tional rights. For example, plaintiff alleges that he witnessed the murder by unnamed white male guards of an unnamed black male prisoner who refused to undress in front of female guards. Complaint at 80. Plaintiff also alleges that unnamed prison authorities have refused to allow him to "use his Holy Name, 'Dakota Belzadok' on any outgoing or incoming mail, even if he puts his incarcerated name along with it." Complaint at 81. Plaintiff alleges that he has been attacked and stabbed by other inmates and issued false major misconduct tickets afterwards by unnamed prison officials. Complaint at 81. Plaintiff alleges that unnamed prison authorities were deliberately indifferent to his need for medical care for a serious ankle injury which occurred during a volleyball game, Complaint at 86, and various broken bones he has suffered in his hands. Complaint at 86–89. However, none of the named defendants in this action are employees of the Michigan Department of Corrections ("MDOC").

Several other allegations are more general, such as plaintiff's contention that: "The Plaintiff is the 'God–Messiah' of the Holy Bible (hereafter HB), *Isaiah* 7:14, 9:6, 11: 1–7; *Ezekiel* 37:22, *Ezekiel* 43: 7–9, *Ezekiel* 44:3, *Daniel* 12:13, *Hosea* 3:5, *Zechariah* 3: 8–9, [and] *Revelation* 10:2, 19:16, 22:12 & 20." Complaint at 24.

The complaint states that the following three questions are presented for the Court's decision:

I.   ARE THE COUNTRIES OF ISRAEL, UNITED STATES OF AMERICA, & GREAT BRITAIN FOUNDED UPON THE HOLY BIBLE ?

II.  IF THE UNITED STATES, ISRAEL, AND GREAT BRITAIN WERE FOUNDED UPON THE HOLY BIBLE, CAN ANY CITIZEN OR JUDGE OR CONGRESS OR LEGISLATIVE BODY, OR ANY HUMAN, MAKE ANY RULE OR LAW THAT GOES AGAINST WHAT THAT HOLY BIBLE SAYS IS "GOD'S" LAW WHICH HAS NOT BEEN AUTHORIZED TO BE MADE BY "GOD" OR "THE MESSIAH"?

III. IF THE PLAINTIFF CAN **PROVE BY SCIENTIFIC METHODS** THAT HE IS THE "MESSIAH", "THE ANOINTED ONE", THE "ALPHA & OMEGA", "GOD IN THE FLESH", THAT THE HOLY BIBLE SAYS WAS TO COME, THEN CAN ANY COURT IN THE UNITED STATES OR GREAT BRITAIN, OR ISRAEL REFUSE TO GRANT THE PLAINTIFF THE RELIEF HE REQUESTS IN THIS PETITION/COMPLAINT?

Complaint at 4 (bold print in original).

The plaintiff's "causes of action," summarized on pages 118 and 119 of the complaint, sound both in tort and contract. The list of torts is fashioned after the "humans law system" to which, it is alleged, "the Plaintiff is not bound to adhere," and includes various claims of negligent, gross negligent and intentional conduct such as larceny, fraud, misrepresentation, and false imprisonment. The contract action is based upon the premise that "Plaintiff is 'GOD MESSIAH', whom humans made a covenant with (a contract), Plaintiff has fulfilled all his part of that covenant, humans have not." Complaint at 118.

The complaint requests many forms of relief, which are consistent with plaintiff's view of his place and status in this world. Plaintiff's requests, which are presumably directed to the governmental defendants, include, but are not limited to 1) public acknowledgment by the State of Israel

that plaintiff is the King of the Jews; 2) release from prison of the killers of Yitzak Rabin; 3) plaintiff's immediate release from prison, or in the alternative, a declaration by the State of Israel that plaintiff is a political prisoner; 4) treatment of the Red Heifer, Melody, as Royalty; 5) a public declaration that plaintiff is also Allah and, at his insistence, an immediate establishment of a state of peace and disarmament in the Middle East; 6) a declaration of safe passage and sanctuary for Osama Bin Ladin; 7) a declaration from the United States government that plaintiff's claim that he is the Messiah–God is true; 8) issuance of a full pardon for plaintiff; 9) a declaration that the founding fathers of America violated the Ten Commandments when they wrote the United States Constitution and that, consequently, the Constitution and any powers established thereunder have no legal authority over plaintiff, and 10) return to the United States of all U.S. military personnel and as much of their equipment as possible within ninety days.

In the alternative, plaintiff requests that the United States government give plaintiff various material things, including 600 million metric tons of .995 fine gold; 25 billion metric tons of refined steel; 50 million metric tons of refined copper; 250 million metric tons of refined silver; and various animals, including 500 pairs each of mature breeding lake trout, northern pike, small mouth and large mouth bass, perch, coho, brown trout, speckled trout, blue catfish, channel catfish, sturgeon, rock bass, bluegill, sunfish, and salmon; 5 million breeding pairs of bison; 500 million mature breeding pairs of each species of crab and mollusk that inhabit the waters in the borders of the United States; and 45 million trees of various varieties at least the age of 50 years old.[5]

From the State of Michigan plaintiff seeks 1) issuance of a full pardon for plaintiff, or in the alternative, immediate issuance of a parole, the full duration of which is to be 60 seconds, 2) transfer of all wheelchair bound prisoners from the Standish Maximum Facility to the Jackson prison complex where they may obtain better care, and other relief set forth on pages 123–24 of the complaint. Alternatively, if plaintiff is not granted a pardon or a sixty-second parole by the State of Michigan, he seeks 50 million metric tons of salt from the Detroit salt mines, 50 million metric tons of copper from Michigan's copper mines, and 25,000 mature breeding pairs of every creature that exists in the State of Michigan, and other items. Complaint at 124. Plaintiff's requests for relief from the other defendants in this lawsuit are found at pages 124 25 of the complaint.

## II.

■■■ A *pro se* litigant's complaint is to be construed liberally. *Middleton v. McGinnis*, 860 F.Supp. 391, 392 (E.D.Mich.1994)(citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Further, because access to the courts is essential to the enforcement of laws and protection of the values that are rooted deeply in our democratic form of government, this Court may not treat lightly the claims of any litigant, even those whose contentions appear fantastic and baseless on their face. Each complaint is entitled to a thorough review to determine whether it has merit and states a federally cognizable claim. The cost of this sound judicial policy, measured in the

---

5. Plaintiff's complete list of material objects requested is found at page 122 of the complaint. Plaintiff has not indicated where these animate and inanimate objects should be delivered, stored, kept or cared for.

expenditure of judicial resources, is one that is well worth the benefit of open access to the judicial process.

■ However, because judicial resources are not limitless, Congress has enacted the Prison Litigation Reform Act and thereby directed courts to examine certain complaints filed by prisoners in order to make a preliminary assessment of the merits before permitting the full engagement of the adversary process. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. Thus, the Court may dismiss an indigent prisoner's civil rights complaint at any time if the action is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "A complaint lacks an arguable basis in law or fact if it contains factual allegations that are 'fantastic or delusional' or if it is based on legal theories that are indisputably meritless." *Brown v. Bargery,* 207 F.3d 863, 866 (6th Cir.2000)(citing *Neitzke,* 490 U.S. at 327–28, 109 S.Ct. 1827). *See also Lawler v. Marshall,* 898 F.2d 1196, 1198–99 (6th Cir. 1990)(a complaint lacks an arguable basis in fact when its factual allegations are fantastic or delusional, such as allegations that Robin Hood and his Merry Men deprived prisoners of their access to mail or that a genie granted a warden's wish to deny prisoners any access to legal texts). A complaint fails to state a claim "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown,* 207 F.3d at 867. *Sua sponte* dismissal is appropriate if the complaint lacks an arguable basis when filed. *McGore v. Wrigglesworth,* 114 F.3d 601, 612 (6th Cir. 1997).

■ The Court of Appeals has held that the authority to screen and *sua sponte* dismiss complaints under 28 U.S.C. § 1915(e)(2) is limited to those complaints filed *in forma pauperis. Benson v. O'Brian,* 179 F.3d 1014, 1015 (6th Cir.1999). Plaintiff did not file his complaint in this case as an indigent; he paid the filing fee and did not seek *in forma pauperis* status. "Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn,* 183 F.3d 477, 478 (6th Cir.1999)(per curiam).

■ However, a review of a state prisoner's civil rights complaint pursuant to 28 U.S.C. § 1915A is appropriate regardless of indigency status when the claim is brought against the state. *Benson,* 179 F.3d at 1017. If a prisoner's complaint seeks redress from a governmental entity, officer, or employee, Congress has directed that the district court must dismiss it, or any part thereof, which (a) is frivolous, malicious, or fails to state a claim upon which relief can be granted, or (b) seeks monetary relief from a defendant who is immune from suit for monetary damages. 28 U.S.C. § 1915A. Furthermore, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn,* 183 F.3d at 479 (citing *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)(citing numerous Supreme Court cases for the proposition that patently frivolous, attenuated, or unsubstantial claims divest the district court of jurisdiction)).

### III.

In his complaint, the plaintiff has explicitly invoked the provisions of several sources of authority upon which he bases his claims, including the Holy Bible, the Magna Carta, the Mayflower Compact, the Declaration of Rights of 1765, the Declaration of Independence, the Articles of Confederation, the United States Constitution, and the Michigan Constitution of 1963. Although he has not specifically claimed a violation of his "civil" rights, the Court nonetheless will liberally construe plaintiff's complaint in light of the Constitution and the civil rights statutes as well, 42 U.S.C. § 1983, and § 1985(3) since plaintiff has also alleged a conspiracy.

Some of the named defendants are not governmental entities or state officials. Yet, despite this, and the fact that plaintiff paid the filing fee, the Court's dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is based on the reasons outlined in detail below.

### A.

To establish a *prima facie* case under 42 U.S.C. § 1983, a civil rights plaintiff must prove that (1) the defendant acted under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998)(citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). In addition, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

The plaintiff alleges in his complaint that his criminal convictions and sentences are illegal because they were obtained by secular authorities in contravention of the mandates of God as set forth in the Holy Bible. Plaintiff asserts that, consequently, his convictions should be rendered null and void and that he be granted either a pardon or a sixty-second parole. This Court is satisfied that a finding in favor of plaintiff would, necessarily, imply the invalidity of his convictions and sentences. However, plaintiff has not demonstrated that his convictions or sentences have been invalidated. On the contrary, plaintiff seeks relief from his convictions and sentences in the complaint, yet does not petition this Court for a writ of habeas corpus. Plaintiff's complaint is therefore barred by *Heck v. Humphrey*. Consequently, plaintiff's complaint must be dismissed as frivolous for this reason.

### B.

A civil rights complaint must allege that the plaintiff's constitutional rights were violated by a person acting under color of state law to set forth an arguable claim. Plaintiff has not alleged that any of the named defendants violated his constitutional rights. In fact, plaintiff contends that the Constitution does not constitute valid legal authority as to him. Although plaintiff has made specific allegations that unnamed persons violated his constitutional rights and the constitutional rights of others in various ways at various times, plaintiff has not named any persons as the wrongdoers or the constitutional tortsfeasors.

Plaintiff has alleged that all of the named defendants failed to acknowledge that he is the "Messiah–God" and act accordingly toward him. However, plaintiff has no constitutional right to be recognized and treated as the "Messiah–God" or any

other holy, extra-worldly, or supernatural being or power. The relief plaintiff seeks is beyond the authority of the civil law to confer. Therefore, plaintiff's complaint must be dismissed for the elemental reason that he has failed to set forth specific factual allegations that any of the named defendants have violated his rights under the federal constitutional or other federal law. *See Davis v. Michigan Department of Corrections,* 746 F.Supp. 662, 664 (E.D.Mich.1990).

Plaintiff also alleges that the defendants have conspired to deprive him of his constitutional rights. However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987). *See also Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986)("It is not enough for a complaint ... to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). Plaintiff's conclusory allegations of conspiracies and failures by the various defendants to recognize his exalted status do not state a claim under § 1983.

This is the substance and extent of plaintiff's allegations against the named defendants. Therefore, this Court concludes that plaintiff has failed to set forth arguable federal claims against any of the defendants.

### C.

#### 1.

In order to set forth an arguable claim, a civil rights complaint must also allege that the plaintiff's constitutional rights were violated by a person acting under color of state law. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 930, 148 L.Ed.2d 807 (2001). Plaintiff's § 1983 civil rights complaint is frivolous as to defendants Bell, Seigel, Streiber, Punnett, Premier Radio Networks, Supreme Council of Ancient Accepted Scottish Rite of Free–Masonry–Northern Masonic Jurisdiction, Simon & Schuster, and Aish Ha Torah, because they are private individuals, organizations, or corporations not acting under color of state law. *Id.*

Private actors fall within the scope of federal civil rights laws when significant state involvement attaches to their action. The required nexus between the state and the private party may be shown where the state has exercised coercive power, or has provided such significant encouragement of the action, either overt or covert that the choice must in law be deemed to be that of the State. *Id.*

However, in order for a private party's conduct to be under color of state law, it must be "fairly attributable to the state." *Id.; Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "If a private actor is functioning as the government, that private actor becomes the state for purposes of state action." *Gorenc v. Salt River Project Agric. Improvement and Power Dist.,* 869 F.2d 503, 508 (9th Cir.1989)(citing *Terry v. Adams,* 345 U.S. 461, 469–70, 73 S.Ct. 809, 97 L.Ed. 1152 (1953)). When a governmental entity delegates one of its traditional or governmental public functions to a private entity, that private entity may be held liable under the federal Constitution with respect to its performance of that function.

Our cases have identified a host of facts that can bear on the fairness of such an attribution. We have, for example, held that a challenged activity may be state action when it results from the State's exercise of "coercive power," when the

State provides "significant encouragement, either overt or covert," or when a private actor operates as a "willful participant in joint activity with the State or its agents." We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State," when it has been delegated a public function by the State, when it is "entwined with governmental policies" or when government is "entwined in [its] management or control."

*Brentwood,* 531 U.S. at ——, 121 S.Ct. at 930 (internal quotes and citations omitted).

For example, the Supreme Court has applied the public function test to the case of a physician under contract with the state to provide medical services to inmates at a state prison hospital on a part-time basis. *West v. Atkins,* 487 U.S. 42, 54–58, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Similarly, courts have held that the delegation of the traditional governmental functions of incarceration and corrections to a private contractor renders the contractor's employees state actors for purposes of § 1983. *Street v. Corrections Corp. of Am.,* 102 F.3d 810, 814 (6th Cir. 1996); *Giron v. Corrections Corp. of Am.,* 14 F.Supp.2d 1245, 1249–51 (D.N.M.1998)(collecting cases).

In the present case, plaintiff has not shown or alleged that defendants Bell, Seigel, Streiber, Punnett, Premier Radio Networks, Supreme Council of Ancient Accepted Scottish Rite of Free–Masonry–Northern Masonic Jurisdiction, Simon & Schuster, and Aish Ha Torah were performing a traditional government or public function delegated to them by state prison officials. There are no facts stated in the complaint from which state action could be found or inferred.

### 2.

Plaintiff has asserted claims of conspiracy, which the Court considers under 42 U.S.C. § 1985(3), which he main-

tains transforms the private defendants into state actors. A claim of conspiracy under § 1985(3) requires proof of the following elements: 1) a conspiracy of two or more persons; 2) that the conspiracy's purpose is to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; 3) an act in furtherance of the conspiracy; 4) the act causes injury to the person or property of the plaintiff or a deprivation of any right or privilege of a citizen of the United States. *Collyer v. Darling,* 98 F.3d 211, 233 (6th Cir.1996). A § 1985(3) conspiracy must be motivated by a racial or other class-based discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Vague and conclusory allegations of conspiracy unsupported by material facts will not be sufficient to withstand a motion to dismiss conspiracy claims under § 1983 or § 1985(3). *See Collyer,* 98 F.3d at 220; *Brooks v. American Broad. Cos., Inc.,* 932 F.2d 495 (6th Cir.1991); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984). Rather, there must be specific factual allegations showing the existence of the conspiracy, as well as allegations that the conspiring defendants acted with the specific intent to deprive the plaintiff of equal protection of the law. *Azar v. Conley,* 456 F.2d 1382, 1384 (6th Cir.1972); *Blackburn v. Fisk Univ.,* 443 F.2d 121, 124 (6th Cir.1971). The conspiracy allegations in the complaint are conclusory in nature, and therefore fail to set forth arguable claims that the private defendants in this case functioned as state actors. Consequently, plaintiff's civil rights complaint is frivolous as to these defendants because plaintiff has not alleged that they acted under color of law.

### D.

### 1.

Plaintiff has named the State of Michigan, the United States of America,

Great Britain, and the State of Israel as defendants. The Eleventh Amendment bars civil rights actions in federal court brought against states and state employees in their official capacities. *Will v. Michigan Depart. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.1989). A state may not be sued for damages in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *DeKalb County School District v. Schrenko*, 109 F.3d 680, 688 (11th Cir.1997). There is no suggestion that Congress has abrogated Michigan's Eleventh Amendment immunity for claims such as those in this case, or that the State of Michigan has consented to be sued by plaintiff. Therefore, plaintiff's complaint is frivolous as to defendant State of Michigan.

## 2.

Plaintiff has sued Great Britain and the State of Israel seeking various forms of relief from these defendants. However, under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(b), 1602–1611 (FSIA), this Court lacks subject matter and personal jurisdiction over these defendants. Moreover, this action against them is precluded by the Act of State doctrine.

It is beyond question that the FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). Furthermore, jurisdiction over a foreign sovereign is obtainable only when a specific exception to the FSIA applies. 28 U.S.C. § 1604; *see Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103

S.Ct. 1962, 76 L.Ed.2d 81 (1983). Personal jurisdiction over a foreign state likewise exists only when one of the exceptions in the FSIA applies. 28 U.S.C. § 1330(b). That these defendants would claim sovereign immunity if served with a copy of plaintiff's complaint is beyond peradventure. Plaintiff has not shown that any exception to the FSIA exists which would require Great Britain or Israel to answer his claims that he is the Messiah–God and is entitled to release from prison or his alternative manifold requests for relief. Plaintiff alleges that these governments have acted illegally, and cannot have the benefit of immunity, because they have failed to recognize his status as the Messiah–God and act accordingly. Nonetheless, the acts and omissions of which plaintiff complains were official acts or omissions of these governments and those acts or omissions cannot and do not subject them to liability in the courts of the United States. Since the activity complained of is governmental in nature and performed by officials of that government, this Court does not have jurisdiction over those foreign sovereigns. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 307 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

The FSIA is absolute in this regard, no matter how heinous the alleged illegalities. The Supreme Court has held that a lower court lacked jurisdiction over a suit challenging a foreign state's use of military force, allegedly in violation of international law, because the acts at issue fell outside any of the exceptions to sovereign immunity in the FSIA. *Amerada Hess*, 488 U.S. at 443, 109 S.Ct. 683. *See also Saltany v. Reagan*, 886 F.2d 438 (D.C.Cir.1989) (upholding decision that the United Kingdom was not subject to suit in U.S. courts for allowing United States to use British air bases in air strike on Libya), *cert. denied*,

495 U.S. 932, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990); *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 775 n. 1 (D.C.Cir. 1984) (per curiam)(suit against Government of Libya seeking damages for terrorist attack in Israel barred by FSIA), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985). Plaintiff's allegations to the contrary are unavailing. The basis of this immunity doctrine is to protect the executive prerogative and avoid judicial entanglement in the sphere of relations between sovereign states.

■■■ The events of which plaintiff complains of were public acts or omissions of the government committed or omitted within its own territory. Consequently, the allegations in plaintiff's complaint invoke the Act of State Doctrine, which precludes American courts from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). Furthermore, this prudential doctrine is designed to avoid judicial action in sensitive areas. It "expresses the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder rather than further this country's pursuit of goals both for itself and for the community of nations as a whole in the international sphere." *Id.* at 423, 84 S.Ct. 923; *see also Dayton v. Czechoslovak Socialist Republic,* 672 F.Supp. 7 (D.D.C.1986), *aff'd,* 834 F.2d 203 (D.C.Cir.1987), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988). Thus an important and vital doctrine counsels the Court to refrain from asserting jurisdiction over the sovereign defendants,

Great Brittain and Israel, even were they stripped of the cloak of FSIA immunity. Therefore, this Court concludes that plaintiff's complaint is frivolous as to defendants Great Britain and the State of Israel.

### 3.

Plaintiff's claims against the United States of America can be viewed as asserting two bases for relief, one of which is grounded in the Fifth Amendment. The first is a claim for declaratory and injunctive relief based on the defendant government's alleged violations of plaintiff's rights and privileges as "Messiah–God." Because, as the Court noted above, plaintiff has no constitutional right to be acknowledged as a deity, the claim is insubstantial and its underpinnings are implausible.

The second is a damage claim for the commission by the government of alleged constitutional torts in violation of plaintiff's Fifth Amendment rights. This type of claim has been recognized by the Supreme Court. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Plaintiff's complaint anticipates an immunity defense by defendant United States. Despite plaintiff's arguments, this Court concludes that sovereign immunity bars any of plaintiff's claims against the United States.

■■■ A claim against the United States for money damages is barred absent a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).[6] Such a

**6.** Although plaintiff has not requested money damages as such, he has requested the "payment" of damages in kind in the form of large amounts of precious, semi-precious, and non-precious metals. The monetary value of these

metals is readily available. Therefore, this Court concludes that plaintiff has made the functional equivalent of a *Bivens*-type claim for money damages.

waiver cannot be implied; it must be expressed unequivocally. *Id.* at 399, 96 S.Ct. 948. Plaintiff contends that the United States has waived its sovereign immunity. Although *Bivens* authorizes actions for money damages against government officials for violations of constitutional rights, the mere filing of such an action in federal court will not effectuate a waiver of immunity against a governmental defendant, *i.e.,* a governmental entity or official sued in his or her official capacity. *See Holloman v. Watt,* 708 F.2d 1399, 1402 (9th Cir.1983); *Boda v. United States,* 698 F.2d 1174 (11th Cir.1983); *Adelona v. Webster,* 654 F.Supp. 968 (S.D.N.Y.1987); *Mid–South Music Corporation v. United States Dept. of the Treasury,* 579 F.Supp. 481 (M.D.Tenn.1983), *rev'd on other grounds,* 756 F.2d 23 (6th Cir.1984). The court finds that the plaintiff has failed to demonstrate a waiver of sovereign immunity with respect to his claim for the equivalent of money damages and that claim against the United States is therefore dismissed. *See Bivens,* 403 U.S. at 410, 91 S.Ct. 1999 (Harlan, J., concurring).[7]

Because there is no legal basis for any of plaintiff's claims, because several of the claims are barred by various immunity doctrines, and because the factual premises of the complaint are implausible, the Court finds that plaintiff's complaint is so devoid of merit that it fails to invoke this Court's subject matter jurisdiction, *see Apple,* 183 F.3d at 479–80, and therefore must be dismissed.

### IV.

As noted above, plaintiff's complaint does discuss prison conditions, the conduct of certain prison employees (although none are named as defendants), and substandard medical treatment, although these allegations do not appear to be the basis of plaintiff's claims for relief. Rather, they are merely illustrations of the extent of the indignity foisted upon plaintiff which he contends is unjust by virtue of his spiritually exalted status. It is the nature of plaintiff's basic premise, which undergirds his entire complaint, that compels this Court to discuss an additional, overarching reason that the complaint must be dismissed as to all defendants.

As noted above, a complaint which contains allegations that are "fantastic or delusional" lacks even an arguable basis in both fact and law. *Brown v. Bargery,* 207 F.3d at 866 (citing *Neitzke v. Williams,* 490 U.S. at 327–28, 109 S.Ct. 1827). "[T]he term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke,* 490 U.S. at 325, 109 S.Ct. 1827.

Not surprisingly, the courts have found allegations that a plaintiff is a deity to be fanciful, fantastic, and delusional. Consequently, the courts have held such complaints to be frivolous because of their inadequate factual bases. *See, e.g., Mallon v. Padova,* 806 F.Supp. 1189, 1191–92 (E.D.Pa.1992)(finding that plaintiff's allegations that he was God and the President of the United States were fantastic and delusional and complaint frivolous); *accord Grier v. Reagan,* Civ. A. No. 86–0724, 1986 WL 3948 (E.D.Pa. Apr.1, 1986)(finding that plaintiff's claim she was God of the Universe fantastic and delusional and dismissing as frivolous complaint which sought items ranging from a size sixteen

---

**7.** While the United States has waived its sovereign immunity for certain common law torts under the Federal Tort Claims Act (28 U.S.C. §§ 1346 and 2671, *et seq.*) and certain other claims for monetary damages in the Court of Claims under the Tucker Act, *see* 28 U.S.C. § 1346, plaintiff must comply with the express provisions of those acts in order to establish a right to relief. He has not done so in this case.

mink coat and diamond jewelry to a three bedroom home in the suburbs and a catered party at the Spectrum in Philadelphia).

In *Robinson v. Love,* 155 F.R.D. 535, 535 (E.D.Pa.1994), the court found that a prisoner's civil rights complaint could be dismissed as frivolous where the plaintiff pleaded events which were "highly unlikely to be true, but [we]re at least theoretically within the realm of possibility." In *Robinson,* Judge Robreno found that:

> [I]f the allegations contained in the complaint, while theoretically within the realm of the possible, stand genuinely outside the common experience of humankind, such claims may also be dismissed as irrational or wholly incredible.

*Id.* at 536 (noting that allegations that prison staff members were holding plaintiff's relatives, friends, and neighbors hostage and that plaintiff had been subjected to witchcraft and attempted cyanide poisoning were factually frivolous, despite theoretical possibility).

That courts have devoted substantial effort toward debunking such claims, albeit en route to summary dismissal, may seem to some an unjustified waste of judicial resources and an inappropriate dignification of allegations that should be rejected out-of-hand. However, the fundamental right of claimants to their day in court—their opportunity to be heard—is so deeply ingrained in our judicial tradition that summary dismissal of even the most fanciful complaints requires genuine analysis and consideration. It is the judicial process that is dignified by such an effort, not the complaint itself.

In the present case, plaintiff claims to be the "Messiah–God" and contends, therefore, that he is entitled to various forms of relief, ranging from release from prison and pardon for his crimes, to the award of a vast array of living and non-living physical objects. This Court is persuaded that plaintiff's underlying factual allegation that he is the "Messiah–God" is fantastic and delusional. This Court is also persuaded that plaintiff's legal theory is indisputably meritless.

In reaching these conclusions, this Court is mindful of the fact that plaintiff has the constitutional right under the First Amendment to hold any religious belief he chooses.

> Under the United States Constitution, an individual's right to believe in anything he or she chooses is unquestioned. Religious beliefs are not required to be consistent, or logical, or acceptable to others. Governmental questioning of the truth or falsity of the beliefs themselves is proscribed by the First Amendment. *Cantwell v. State of Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944). A religious belief can appear to every other member of the human race preposterous, yet merit the protections of the Bill of Rights. Popularity, as well as verity, are inappropriate criteria.

> "Freedom of thought, which includes freedom of religious belief, is basic in a society of free men.... It embraces the right to maintain theories of life and of death and of the hereafter which are rank heresy to followers of the orthodox faiths. Heresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others.... The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any

one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views."

*United States v. Ballard,* 322 U.S. 78, 86–87, 64 S.Ct. 882, 886–87, 88 L.Ed. 1148 (1944).

When, however, an individual seeks to act on a belief, and that action poses a threat or inconvenience to other citizens, or to some important aspect of public law and policy, the requirements of an ordered society may demand that the courts make limited inquiry into bona fides. *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Founding Church of Scientology v. United States,* 133 U.S.App. D.C. 229, 409 F.2d 1146, 1154–55 (1969).

*Stevens v. Berger,* 428 F.Supp. 896, 899–900 (E.D.N.Y.1977).

Plaintiff's belief that he is the "Messiah–God" described in the Judeo–Christian Bible and is therefore entitled to release from confinement, or in the alternative, to vast amounts of worldly treasure, does not entitle him to relief in this Court, or even to allow him to serve his complaint upon the defendants and require them to answer.

Plaintiff filed in this Court a 125–page complaint with over eighty pages of exhibits purporting to prove his allegation that he is the Messiah–God by "scientific methods." Complaint at 4.[7] He has obviously devoted prodigious amounts of time, energy, and disciplined effort to assembling his proofs. His submissions are neatly typed and his rambling and lengthy expositions about prison conditions and his own alleged deity are readable and comprehensible, despite their often irrational, megalomaniacal content.

However "[t]o conclude that [plaintiff's] complaints are factually 'fanciful' is an understatement." *Mallon,* 806 F.Supp. at 1192. At the least, plaintiff's claim to be the Messiah–God is sufficiently irrational and wholly incredible as to render each of his subsidiary claims factually baseless. *Robinson,* 155 F.R.D. at 536. Belief in God and a Messiah are matters of faith. In the final analysis, they cannot be proven scientifically. The determination of the existence and nature of a supernatural power is beyond the scope of valid governmental authority, U.S. Constitution Amend. I, and certainly outside the limited jurisdiction of the federal courts. The plaintiff's overwrought attempts to judicially establish "scientifically" through numerology, symbolic name analysis, and sheer repetitive assertion that he is the Messiah or Messiah–God are unconvincing and clearly baseless.[8]

## V.

For the reasons stated above, the Court finds that the plaintiff's complaint is an exercise in delusion and fantasy, and nothing more. It is entirely baseless, unsubstantial, devoid of merit, frivolous and

---

**7.** Much of the complaint and accompanying exhibits are single-spaced.

**8.** The Court is mindful of the teaching that: "If anyone says to you, 'Look, here is the Messiah! Look, there he is!' Do not believe it. False messiahs and false prophets will arise and will perform signs and wonders in order to mislead, if that were possible, the elect. Be watchful! I have told it all to you beforehand." *Mark* 13:21–23 (New American Bible, St. Joseph ed.). Plaintiff's preoccupation with numerology and codes calls to mind the statement of another "Mark": "There are three kinds of lies: lies, damned lies, and statistics." Mark Twain, *Autobiography.*

must be dismissed pursuant to Fed.R.Civ. Pro. 12(b)(1) because of lack of subject-matter jurisdiction.

Furthermore, the Court is satisfied that an appeal of the present case would not be taken in good faith, and therefore an appeal may not be pursued *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3).

Accordingly, it is **ORDERED** that the plaintiff's complaint is **DISMISSED** with prejudice.