755 A.2d 1184 (2000)
333 N.J. Super. 385
Jesse ROSENBLUM, Plaintiff-Appellant,
v.
BOROUGH OF CLOSTER, Closter Planning Board, Temple Emanuel of Englewood, Jerome Morrison, Linda Richardson, and Green Acres Program of the New Jersey Department of Environmental Protection, Defendants-Respondents.
Jesse Rosenblum, Plaintiff-Appellant,
v.
Thomas Simcox, Sarah H. Simcox, Closter Zoning Board of Adjustment and Closter Tax Assessor, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted March 15, 2000.
Decided July 20, 2000.
*1185 Jesse Rosenblum, appellant pro se in both appeals.
John J. Farmer, Jr., Attorney General, attorney for respondent State of New Jersey, Department of Environmental Protection in A-3771-98T1 (Mary C. Jacobson, of counsel and Jason T. Stypinski, on the brief).
Robert P. Contillo, Paramus, attorney for respondent Closter Planning Board in A-3771-98T1 (Mr. Contillo, on the brief).
Breslin & McNerney, Hackensack, attorneys for respondents Closter Zoning Board of Adjustment and Closter Tax Assessor in A-4770-98T3 (Michael J. Breslin, on the brief).
Jacobs and Bell, Tenafly, attorneys for respondents Thomas Simcox and Sara H. Simcox in A-4770-98T3 (Raphael G. Jacobs, on the brief).
Before Judges STERN, WEFING, and STEINBERG.
The opinion of the court was delivered by STERN, P.J.A.D.
These appeals, consolidated for purposes of this opinion, require us to decide whether a pro se litigant can be enjoined from filing a complaint on the grounds that his or her prior complaints have been frivolous and result in harassing and vexatious litigation. We hold that an Assignment Judge can prevent the filing of *1186 a complaint, or issuance of a summons thereon, when the plaintiff's prior litigation demonstrates a pattern of frivolous pleadings, provided that it is also demonstrated that traditional sanctions for frivolous litigation have provided no deterrent to the plaintiff and the Assignment Judge reviews the complaint and is satisfied that it has no merit. As the record in these cases does not reflect consideration of these factors, we remand for proceedings consistent with this opinion.
In 1995, a Superior Court judge barred plaintiff from filing a complaint in the Superior Court without prior approval from the Assignment Judge or Presiding Judge of the Civil Division in Bergen County. The order was apparently entered because plaintiff had a history of filing numerous frivolous complaints.
The judge:
ORDERED, that Plaintiff JESSE ROSENBLUM be and is hereby prohibited from filing any civil lawsuit or administrative law complaint unless and until said complaint has been reviewed and approved for filing by the presiding civil assignment Judge in Bergen County, and it is further
ORDERED, that the Bergen County Clerk is hereby directed to refuse to accept any complaint for filing unless and until receipt of approval from the sitting civil assignment Judge in Bergen County, and it is further
ORDERED, that the Office of Administrative Law be and is hereby enjoined from accepting any complaints from Plaintiff unless same has been reviewed and approved by the presiding civil assignment Judge in Bergen County.[1]
When plaintiff endeavored in February 1999 to file the first complaint before us, after writing to the Assignment Judge for permission in light of the 1995 order, the Assignment Judge directed the Civil Division Manager not to accept the complaint because she had not given plaintiff permission for its filing. Her reasons were detailed in a letter dated February 19, 1999, as follows:
First, there is an Order in place, which is controlling. Judge Napolitano ordered that you be prohibited from filing any civil lawsuit or administrative law complaint unless and until said complaint has been reviewed and approved for filing by the Civil Assignment Judge in Bergen County. That order was never appealed and is still applicable.
Second, it is clear to me (despite not having spoken to former Judge Napolitano) that the order was generated as the result of an application which led to him granting frivolous lawsuit counsel fees against you in the matter of Rosenblum v. Miele, L-6304-94. He was obviously frustrated by the volume of cases filed by you and by the fact that he found that specific case was frivolous.
Third, I have reviewed our files to determine the number of lawsuits in which you have been involved since 1990. Attached is a list of all the cases in which you have been involved since 1990. The total is 16, not including the within case. This is an extraordinary number, and requires me to exercise discretion as follows.
Pursuant to R. 1:33-4(a), the Assignment Judge shall have plenary responsibility for the administration of the courts within the vicinage. Under R. 1:33-4(b), she is responsible for the efficient and economic management of all courts within the vicinage and is responsible, under R. 1:33-4(c) for supervision and efficient management of all court matters filed in the vicinage. Given that solemn and heavy responsibility, given the fact that the Order of Judge Napolitano was never appealed, given the fact *1187 that you have filed 16 lawsuits within the last nine years, and given the fact that these suits impact the efficient and economic management of the courts within the vicinage, I will not give my approval, solely on a procedural basis, to the filing of the above captioned complaint.
Thereafter, on March 1, 1999, plaintiff filed a writ of mandamus along with a notice of appeal to us alleging that "the assignment judge of Bergen County deprived plaintiff/appellant of procedural due process." On April 1, 1999, we denied the writ, noting that this court would only consider plaintiff's arguments "in the ordinary course upon perfection of the appeal."
On April 8, 1999, plaintiff attempted to file a second complaint in Bergen County. In accordance with the 1995 order, he again submitted the complaint to the Assignment Judge who again denied his application for permission to file the complaint. In a letter dated April 15, 1999, she explained that "[a]bsent direction from the Appellate Division," the judge would not change the position outlined in the February 19, 1999 letter regarding the first complaint. Plaintiff also appealed that decision.
We have consolidated the two appeals for purposes of this opinion to consider plaintiff's claim that the Assignment Judge abused her authority in failing to permit plaintiff to file the complaints, and violated plaintiff's constitutional right to due process by improperly limiting his right to access of the courts.
We commence our analysis by rejecting the suggestion advanced in the Assignment Judge's February 19, 1999 letter, and by the counsel for the prospective defendants who defend that letter, that plaintiff can never file another complaint, no matter how meritorious, merely because he did not appeal the original 1995 order. Even assuming that we would have considered an appeal from that order, the controversy did not become ripe for adjudication until plaintiff sought to file a complaint. The Assignment Judge's order, prohibiting the actual filing of specific complaints, must be deemed a final determination for purposes of this appeal.
In considering the issues raised on the appeal, we note that "[t]he due process clause of the fourteenth amendment imposes upon state actors an obligation to refrain from preventing individuals from obtaining access to the civil courts." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir.1990) (citing Wolff v. McDonnell, 418 U.S. 539, 578-79, 94 S.Ct. 2963, 2985-86, 41 L.Ed.2d 935 (1974) (stating that the due process clause of the fourteenth amendment guarantees citizens access to courts to present claims of wrong doings)), cert. denied, 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991); Boddie v. Connecticut, 401 U.S. 371, 380-81, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971) (finding a violation of due process to deny indigent access to court to file complaint for divorce) (other citations omitted). As the complete denial of the filing of a claim without judicial review of its merits would violate the constitutional right to access of the courts, U.S. Const. amend. XIV, § 1, it seems clear that the 1995 order was only intended to allow the Assignment Judge or Civil Presiding Judge the opportunity to dismiss frivolous claims filed by plaintiff before the time and expenses of the courts and of the litigants were wasted. Thus, the order was designed to give the court authority to review plaintiff's complaints before they were filed to determine if they were frivolous. An absolute denial of the right to file a complaint without any judicial review is otherwise unconstitutional.
In these cases, the Assignment Judge did not refer to the allegations of the complaint or decline to permit the filing based on the nature of the allegations. She merely cited to plaintiff's prior history of filing frivolous complaints, and stated that in the interest of judicial "efficient and economic management" his complaints would be dismissed. There is no indication *1188 that she considered either complaint to be frivolous.
Plaintiff's first complaint deals with the Closter Borough Planning Board's alleged arbitrary approval of a site plan that would create a non-conforming use for the construction of a religious temple. The second complaint deals with the Closter Zoning Board of Adjustment's alleged improper grant of a use variance to expand a business use onto residential property. In order to comply with the due process clause and the 1995 order, the Assignment Judge was required, at the very least, to review the complaint and state reasons for declining to permit its filing. Cf. R. 1:7-4.
Our rules of pleading require that a complaint is to be construed liberally in terms of stating a claim for relief, R. 4:5-2, and that all facts and inferences be construed in favor of the plaintiff in order to sustain the complaint. See, e.g., Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989); Urban League of Greater New Brunswick v. Township Comm. of Cranbury, 222 N.J.Super. 131, 140, 536 A.2d 287 (App.Div.1987), rev'd on other grounds sub nom. Urban League of Greater New Brunswick v. Mayor and Council of Carteret, 115 N.J. 536, 559 A.2d 1369 (1989); Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J.Super. 22, 29-30, 465 A.2d 530 (App.Div.1983), rev'd on other grounds, 98 N.J. 555, 489 A.2d 660 (1985). Stated differently,
the complaint must be searched in depth and with liberality to determine if a cause of action can be gleaned even from an obscure statement, particularly if further discovery is taken. Every reasonable inference is therefore accorded the plaintiff and [a] motion [to dismiss for failure to state a claim] granted only in rare instances and ordinarily without prejudice.
[Pressler, Current N.J. Court Rules, comment 4.1 on R. 4:6-2 (2000) (citing Printing Mart, supra, 116 N.J. at 746, 563 A.2d 31).]
But that does not mean that the allegations cannot be reviewed by the Assignment Judge with an understanding of the results of past litigation and similar allegations which have turned out to be frivolous, suggesting that the present complaintparticularly without detailed specificitymay well be the same.
Accordingly, we agree with the Assignment Judge that where a pattern of frivolous litigation can be demonstrated, the Assignment Judge can prevent the complaint from being filed.[2] In the rare case in which this discretion is exercised, however, the Assignment Judge should also examine whether the prior litigation has resulted in sanctions and whether the imposition of sanctions can have a deterrent impact. See N.J.S.A. 2A:15-59.1; R. 1:4-8 (referring in subsection (d) to "a sum sufficient to deter repetition of such conduct").[3]
Our holding is consistent with the trend of developing caselaw around the country. In Armstrong v. Koury Corp., 16 F.Supp.2d 616, 620 (M.D.N.C.1998), aff'd, 168 F.3d 481 (4th Cir.1999), the court was faced with a pro se litigant who filed six repetitive and frivolous complaints against the same defendant regarding the same transaction. When financial penalties had no effect on the plaintiff, an injunction was *1189 issued "enjoin[ing] Plaintiff from access to the federal court system without prior leave of court." Id. at 621. The injunction was drafted to include all actions in state or federal court. Ibid. The District Judge held that:
The court is given substantial discretion to craft appropriate sanctions, and an injunction from filing any further actions is an appropriate sanction to curb groundless, repetitive, and frivolous suits: "A court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court." Lysiak v. Commissioner of Internal Revenue, 816 F.2d 311, 313 (7th Cir. 1987); see also Pavilonis [v. King], 626 F.2d [1075,] 1079 [ (1st Cir.) ] (injunction pertaining to all pleadings and future lawsuits)[, cert. denied, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980) ]; Gordon v. United States Dep't of Justice, 558 F.2d 618 (1st Cir.1977) (enjoining continuing, instituting, or prosecuting, without prior leave of court, any legal proceeding in any court); Hilgeford v. Peoples Bank, Inc., 652 F.Supp. 230 (N.D.Ind.1986) (enjoining any filings or proceedings in any federal court).

[Id. at 620.]
The court noted that it not only has the power "to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions," but also bears the constitutional obligation to do so. Ibid. (quoting In re Martin-Trigona, 737 F.2d 1254, 1261 (2d Cir.1984)). "There are no exceptions for pro se litigants." Ibid. (citing Mallon v. Padova, 806 F.Supp. 1189 (E.D.Pa.1992)).
In Mallon v. Padova, supra, 806 F.Supp. at 1191-92, a pro se litigant filed eleven frivolous complaints against various defendants within the course of two weeks. Recognizing that an injunction "is an extreme remedy which must be narrowly tailored and sparingly used," id. at 1193 (citation omitted), the court noted that "if it is convinced that there is a substantial likelihood that a litigant will continue to file frivolous lawsuits, a district court is not required to sit idly by and allow a party to waste precious judicial resources," id. at 1194. The court, therefore, enjoined the plaintiff "from filing further actions without prior approval from this Court." Id. at 1190. The court explained that the motivation behind filing these frivolous complaints was irrelevant in determining whether an injunction is appropriate, because the abuse of the process has the same effect. Id. at 1195.
Whether the frivolous filing is motivated by malice or is the result of a litigant's fragile hold on reality, the result of the unabated abuse is the same, i.e., an inevitable decline of public confidence in the court's ability to run its own affairs fairly and efficiently. Concern for the integrity of the court has provided a partial basis for decisions in which courts have approved of injunctions of this nature.

[Ibid. (citations omitted).]
Therefore, the court concluded, "[s]imply put, the Court will not permit the expense of its limited resources and the abuse of its process per chance that an abusive litigant might possibly file a non-frivolous lawsuit." Ibid.
In Stich v. United States, 773 F.Supp. 469, 471 (D.D.C.1991), order aff'd, 976 F.2d 1445 (D.C.Cir.1992), the court found that identifying an abuse of the system is the most critical portion of the analysis. The judge in Stich referred to the plaintiff as a "serial litigator" and a "regular customer," as he filed more than thirty frivolous actions in the course of three years. Id. at 470. The court held that due to the recognized obligation of the courts to carry out its constitutional functions effectively, once an abuse of the system is identified, a litigant can "be required to obtain leave of the court before" filing any future suits. Id. at 471. The plaintiff was therefore enjoined from "filing any new civil complaint" without leave of court and making a *1190 showing that his claim was a matter not duplicative, previously raised, or adjudicated. Id. at 471. The court emphasized that its order did not preclude the filing of future suits, only that the litigant must obtain leave from the court before doing so. Ibid.
These opinions follow Court of Appeals precedent. In Abdul-Akbar v. Watson, 901 F.2d 329, 331 (3d Cir.1990), the Third Circuit addressed the problem caused by a prisoner who filed numerous § 1983 actions over a number of years. The court distinguished between frivolous complaints and litigants that abuse the system, stating that "a frivolous complaint is one thing; a continuing abuse of process is another," and concluded that "[w]hen a district court is confronted with a pattern of conduct from which it can only conclude that a litigant is intentionally abusing the judicial process and will continue to do so unless restrained, ... it is entitled to resort to its power of injunction and contempt to protect its process." Id. at 333. It created the following test for instituting an injunction:
when a district court concludes that a litigant has abused the judicial process by filing a multitude of frivolous § 1983 cases in a relatively brief period of time and will continue to file such cases unless restrained, we hold that the court may enter an injunction directing that the litigant not file any section 1983 claims without leave of court and that in seeking leave of court, the litigant certify (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts, (2) that he believes the facts alleged in his complaint to be true, and (3) that he knows of no reason to believe his claims are foreclosed by controlling law. Such an injunction should state that upon a failure to certify or upon a false certification, the litigant may be found in contempt of court and punished accordingly.

[Ibid.]
The court emphasized that an injunction should only be directed to one "whose history of repetitious and frivolous filings indicates a clear intent to abuse the courts" and that the injunction can require "only that a litigant refrain from filing a repetitious claim or a claim that the indigent knows to be frivolous." Id. at 334. Moreover, in the case before it, the court found that the suit was not frivolous and that "the district court did not expressly find that an injunction was necessary in order to avoid future abuse of the court's process...." Id. at 335.
Other Courts of Appeal have also held injunctions to be permissible to enjoin a litigant from filing frivolous or vexatious complaints. See Lysiak v. Commissioner of Internal Revenue, 816 F.2d 311, 312-13 (7th Cir.1987) (holding that where "the mere imposition of further financial penalties will not adequately protect [against]... abusive litigating ... [a] court faced with a litigant engaged in a pattern of frivolous litigation has the authority to implement a remedy that may include restrictions on that litigant's access to the court"); Safir v. United States Lines, Inc., 792 F.2d 19, 24-25 (2d Cir.1986), cert. denied, 479 U.S. 1099, 107 S.Ct. 1323, 94 L.Ed.2d 175 (1987) (listing factors for evaluating whether an injunction is warranted, and summarizing the question as "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties" but making clear the injunction should not prevent "what might be a meritorious claim"); Procup v. Strickland, 792 F.2d 1069, 1073-74 (11th Cir.1986) (finding that although a court may not completely foreclose a litigant from access to the courts, "[t]he court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others"); Castro v. United States, 775 F.2d 399, 410 (1st Cir.1985) ("emphasiz[ing] that an injunction against litigation should be narrowly drawn to fit the specific vice encountered"); Pavilonis v. King, *1191 626 F.2d 1075, 1078-79 (1st Cir.), cert. denied, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980) (stating that an attempt to harassnot just litigiousnesswas required to support an injunction, and that "[t]he law is well established that it is proper and necessary for an injunction to issue barring a party ... from filing and processing frivolous and vexatious lawsuits" (quoting Gordon v. United States Dept. of Justice, 558 F.2d 618 (1st Cir. 1977))).
It seems to us that these cases are not completely consistent as to the prerequisites for an injunction, but taken together clearly require the Assignment Judge to do more than conclude plaintiff's prior complaints were frivolous. The Assignment Judge must be assured that more traditional sanctions will not protect against frivolous litigation and must review the new complaint to be assured that a meritorious claim is not suppressed.
In D'Amore v. D'Amore, 186 N.J.Super. 525, 529, 453 A.2d 251 (App.Div.1982), the plaintiff-former wife moved post-judgment to compel the defendant to produce certain documents. The defendant responded by asserting that the motion was made simply to harass him, and therefore moved to enjoin the plaintiff from making any future motions. Ibid. The trial court granted the defendant's motion, "the order providing that `plaintiff be and she is hereby barred and prohibited from filing any further harassing motions against defendant in the future.'" Ibid. On appeal, we held that the injunction was improper, notwithstanding the fact that "[t]here is, of course, no question of the power of the court to enjoin prospective harassing litigation." Id. at 530, 453 A.2d 251. However, "that power must be exercised consistently with the fundamental right of the public to access to the courts in order to secure adjudication of claims on their merits." Ibid. In so stating, we recognized only "two circumstantial categories of enjoinable litigation":
[t]he first includes attempts to litigate claims despite their preclusion by such legal doctrines as res judicata. The second includes claims which are already pending or are about to be instituted in another forum whose jurisdiction thereover is superior or prior.

[Ibid.]
Therefore, we held that "[a] nonspecific and nondiscrete injunction against prospective litigation generally is patently insustainable." Ibid.
D'Amore was not a case dealing with a pro se litigious plaintiff who was repeatedly filing frivolous complaints and absorbing precious court resources. Cf. Iannone v. McHale, 245 N.J.Super. 17, 28-29, 583 A.2d 770 (App.Div.1990). The defendant in D'Amore simply claimed that the counseled plaintiff was carrying on a personal vendetta that was intended to harass him. Nor did D'Amore address the power to enjoin had the plaintiff filed numerous frivolous motions. Cf. Kozak v. Kozak, 280 N.J.Super. 272, 277, 655 A.2d 95 (Ch.Div. 1994) (holding that "[t]he prehearing examination and screening of motions is particularly warranted where the history of the litigation demonstrates the use of repetitive and frivolous motions").
Here, plaintiff filed approximately sixteen actions in Bergen County over the last decade, and the record (or lack of it) suggests that he endeavored to file only these two complaints since entry of the 1995 order. On the record presented, he does not seem to have filed the volume of complaints as some of the plaintiffs involved in the precedent cited above.[4] Nor do we know how many defendants have been sued. The volume and disposition of the cases must be evaluated before the plaintiff can be said to have filed only frivolous litigation. Moreover, as stated above, the Assignment Judge must also *1192 address the allegations in the present complaints and conclude why, if frivolous, traditional sanctions are inadequate to protect the interests of the courts and defendants. She must also give reasons for her conclusion that the complaints may not be filed. In essence, while we appreciate the concerns relating to frivolous litigation, the record the Assignment Judge must build in order to sustain her decision not to permit the filing may raise questions of practicality, at least where other sanctions for frivolous litigation can provide a deterrent and can be collected or enforced. The bottom line is that the integrity of the judicial system cannot be compromisedand a complaint against a culpable defendant (including public entities, as here) quashedmerely because plaintiff has filed frivolous complaints in the past.
The "orders" preventing the filing of complaints are reversed and the matter is remanded for further consideration consistent with this opinion.
NOTES
[1] Because it is unnecessary for consideration in the cases before us, we do not address whether it is prudent policy for a Superior Court judge to enjoin filings with an administrative agency, even assuming the power to do so, in a case in which the agency or Office of Administrative Law is not a party or has not requested the order.
[2] Given the need for Assignment Judge review, it may be preferable that the complaint be filed, and the Assignment Judge should be able to enjoin the issuance of a summons pending review, but we leave that matter to development by the Conference of Assignment Judges. We also recommend review of this entire question by the Civil Practice Committee.
[3] We recognize that a litigant cannot be incarcerated for his inability to pay a money sanction. We do not herein address whether a litigant can be held in contempt and incarcerated for willfully filing frivolous litigation after being directed not do so. See, e.g., the cases assembled in State v. Anaya, 238 N.J.Super. 31, 40, n. 6, 568 A.2d 1208 (App.Div. 1990).
[4] We have, however, reviewed the records of this court and found that plaintiff has been a party in twenty appeals over the last decade.