**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1357-22
A-1360-22

MICHAEL TAFFARO,

 Plaintiff-Appellant,

v.

PARVIN "PAT" MOAYER,

 Defendant-Respondent.

_____

Submitted November 7, 2024 – Decided January 24, 2025

Before Judges Rose and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket Nos. DC-008578-20 and DC-012301-21.

Michael Taffaro, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

 In these appeals, calendared back-to-back and consolidated for purposes of issuing a single opinion, plaintiff Michael Taffaro challenges various Special

Civil Part orders, ultimately dismissing with prejudice his complaints against defendant Parvin "Pat" Moayer. He also seeks a change of venue. Before the trial court and this court, plaintiff has represented himself.

In Docket No. A-1360-22, referenced by plaintiff as his "jewelry case," plaintiff seeks reversal of a November 18, 2022 order denying his motion to vacate the dismissal of his complaint with prejudice, and the underlying orders issued on: July 21, 2022, dismissing his complaint without prejudice; November 1, 2022, denying his motion to "restore" his subpoenas; and November 16, 2022, issuing a litigation injunction against him. Plaintiff raises the following points of error,[1] which we reprint without alteration:

> Brief Point I:
>
> JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE "WITH PREJUDICE" DESPITE PREVIOUSLY DISMISSING IT "WITHOUT PREJUDICE" AND COUNTER TO THE COURT RULES COMMANDING JURY CASES TO BE "HEARD ON THE MERITS" ACCORDING TO COURT RULE...? (JUDGE MONAGHAN KNOWS IT)

---

[1] Plaintiff's electronically filed merits brief is twenty-six-pages and contains nine-points. The hard copy of his filed merits brief is forty-two pages and contains ten points. We have considered plaintiff's additional assertions, including a new argument raised under point IX in the hard copy of his merits brief.

Brief Point II:

JUDGE ROBERT C. WILSON DISMISSED MY CASE BY ERRONEOUSLY BASING HIS DISMISSAL ON MY NON-APPEARANCE WHICH HE SPECIFIED IN HIS ORDER

Brief Point III:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE DUE TO MERE "AUDIO PROBLEMS" WITH THE COURT'S AUDIO EQUIPMENT

Brief Point IV:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE BY DENYING ME THE BASIC RIGHT TO SUBPOENA WITNESSES, THEREFORE, DISOBEYING N.J. COURT RULE 1:9 AS EXPLAINED IN HIS UNFACTUAL RULING ON NOVEMBER 1, 2022 IN RESPONSE TO MY MOTION TO RESTORE WITNESSES

Brief Point V:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED THE THEFT CASE BY BASING HIS DECISION ON FALSITIES, AN INCOMPLETE CRIMINAL AND LITIGATION HISTORY AND "AUDIO PROBLEMS" WITHIN HIS UNFACTUAL 4-PAGE SUA SPONTE OPINION ON NOVEMBER 1, 2022

Brief Point VI:

JUDGE ROBERT C. WILSON
ERRONEOUSLY DISMISSED MY CASE BY
IGNORING MY LETTERS, ADJOURNMENT
REQUESTS AND PENDING MOTIONS,
THEREFORE, DISOBEYING THE PRECEDENT OF
"R.H. LYTLE VS. SWING-RITE DOOR CO." WHICH
DEMANDS FOR DISCOVERY COMPLETION

Brief Point VII:

JUDGE BONNIE J. MIZDOL ERRONEOUSLY
OVERRULED PRESIDING JUDGE PETER E.
DOYNE'S ORDER WHICH HAD PREVIOUSLY
DENIED WITNESS DANIEL NG'S MOTION FOR
LITIGATION INJUNCTION AGAINST ME IN 2012

Brief Point VIII:

JUDGE BONNIE J. MIZDOL MADE A SUA
SPONTE OPINION WHICH ERRONEOUSLY
CONCLUDES THAT THE TWO PRESENT CASES
AGAINST PARVIN "PAT" MOAYER RISE TO THE
LEVEL OF LITIGATION INJUNCTION AND
ROSENBLUM

Brief Point IX:

JUDGE BONNIE J. MIZDOL DISMISSED MY
CASE WITH MANY MISFACTS THAT NEED TO
BE CORRECTED IN HER 40-PAGE OPINION

Brief Point X:

THERE WAS CUMULATIVE ERROR IN
JUDGE ROBERT C. WILSON'S OPINION DATED
NOVEMBER 1, 2022; HIS DISMISSAL ON JULY 21,

4

2022 DUE TO AUDIO PROBLEMS; HIS DISMISSAL ON NOVEMBER 18, 2022 AND JUDGE BONNIE J. MIZDOL'S OPINION DATED NOVEMBER 16, 2022 WHICH LED TO AN UNJUST RESULT AND CAUSED THE PLAINTIFF TO RECEIVE LITIGATION INJUNCTION AND BE DEPRIVED OF HIS RIGHT TO A FAIR JURY TRIAL IN THIS CASE

In Docket No. A-1357-22, designated by plaintiff as the "defamation case," plaintiff seeks reversal of a November 14, 2022 order denying his motion to vacate the dismissal of his complaint without prejudice and dismissing his action with prejudice for failure to appear at trial. Plaintiff raises the following points for our consideration, which we reiterate verbatim:

Brief Point I:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE "WITH PREJUDICE" DESPITE PREVIOUSLY DISMISSING IT "WITHOUT PREJUDICE" AND COUNTER TO THE COURT RULES COMMANDING JURY CASES TO BE "HEARD ON THE MERITS" ACCORDING TO COURT RULE...? (JUDGE MONAGHAN KNOWS IT)

Brief Point II:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE BY BASING HIS DECISION ON FALSITIES, AN INCOMPLETE CRIMINAL AND LITIGATION HISTORY AND "AUDIO PROBLEMS" WITHIN HIS UNFACTUAL 3-PAGE OPINION

Brief Point III:

THIS DEFAMATION CASE WAS FILED ONE FULL YEAR <u>AFTER</u> THE UNDERLYING THEFT CASE AND SHOULD HAVE BEEN PROPERLY SCHEDULED IN CHRONOLOGICAL ORDER TO AVOID CONFUSION, NOT FORCE PLAINTIFF TO RESUBPOENA WITNESSES AND PROVIDE FUNDAMENTAL FAIRNESS (Not Raised Below)

Brief Point IV:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE BY DENYING ME THE BASIC RIGHT TO SUBPOENA WITNESSES, THEREFORE, DISOBEYING N.J. COURT RULE 1:9 AS EXPLAINED IN HIS UNFACTUAL RULING

Brief Point V:

JUDGE ROBERT C. WILSON ERRONEOUSLY DISMISSED MY CASE BY IGNORING MY LETTERS, ADJOURNMENT REQUESTS AND TWO PENDING MOTIONS ("MOTION FOR A TEMPORARY STAY" AND "MOTION TO ENFORCE WAIVING OF FILING FEES"), THEREFORE, DISOBEYING THE PRECEDENT OF "<u>R.H. LYTLE VS. SWING-RITE DOOR CO.</u>" WHICH DEMANDS FOR DISCOVERY COMPLETION

Brief Point VI:

JUDGE ROBERT C. WILSON ERRONEOUSLY ALLOWED THE ONLY SUBPOENAED WITNESS, ANTHONY R. SUAREZ, TO AVOID TESTIFYING WITHOUT FILING A

A-1357-22

"MOTION TO QUASH THE SUBPOENA" OR EVEN WRITING A LETTER JUST AS THE OTHER FIVE WITNESSES DID IN THE UNDERLYING THEFT CASE (Not Raised Below)

Brief Point VII:

THERE WAS CUMULATIVE ERROR IN JUDGE ROBERT C. WILSON'S SIMILAR, ERRONEOUS THREE-PAGE OPINIONS IN BOTH THE THEFT SUIT AND THIS SUIT WHICH LED TO AN UNJUST RESULT AND CAUSED THE PLAINTIFF TO BE DEPRIVED OF HIS RIGHT TO A FAIR JURY TRIAL IN THIS CASE

We reject these contentions and affirm all orders under review.

I.

Plaintiff's nearly two-decade litigation history in the Bergen County courts engendered the November 16, 2022 order imposing restraints on him as a vexatious litigant pursuant to Rosenblum v. Borough of Closter, 333 N.J. Super. 385 (App. Div. 2000), and is detailed in twenty pages of the accompanying thirty-seven-page written decision of then Bergen County Assignment Judge Bonnie J. Mizdol.[2] We recount the facts and events in some detail to lend context to the orders under review.

---

[2] Judge Mizdol has since retired from the Judiciary. Despite the breadth of her recitation, Judge Mizdol noted the history was incomplete because not all of plaintiff's matters were captured in eCourts, the Judiciary's online filing system.

A-1357-22

## A. Prior Restraints Against Plaintiff

As Judge Mizdol observed in her November 16, 2022 decision, following a "contentious probate dispute over their parents' estate," in 2004, a municipal court judge issued an order barring plaintiff from contacting his sister, Susan Taffaro. Shortly thereafter, plaintiff posted a Craigslist advertisement in Susan's[3] name, soliciting strangers to break into her home and sexually assault her. Plaintiff claimed his acquaintances, Daniel Ng and Redner Portela, accessed his computer and created the post. Plaintiff was prosecuted for fourth-degree contempt, N.J.S.A. 2C:29-9(a), eventually convicted by a jury, and sentenced to a non-custodial probation in November 2011.

The next month, the trial judge in the criminal case issued a no-contact order, prohibiting plaintiff from contacting Susan, her husband and child; plaintiff's brother Vincent Taffaro; Ng; and Portela. Two years later, plaintiff violated the no-contact order and was held in contempt. In her decision, Judge Mizdol noted the trial judge "barr[ed p]laintiff from filing any criminal or civil litigation against any of the persons named in the 2011 no-contact order unless he [wa]s represented by a licensed attorney who has knowledge of the no

---

[3] Because some of the parties share the same surname, we use first names for clarity. We intend no disrespect in doing so.

[-]contact orders." The trial judge also required plaintiff "to undergo a psychiatric examination to determine his mental status and ability to understand and obey court orders."

On appeal, we affirmed plaintiff's conviction but remanded for clarification of the order prohibiting him from contacting members of his family. State v. Taffaro, No. A-1911-11 (App. Div. Apr. 14, 2014). On remand, the judge limited the no-contact order to Susan, her husband and child, and Vincent.

## B. Prior Actions

Plaintiff also litigated matters with other family members. In 2003, plaintiff's uncle, Thomas Taffaro, filed criminal charges against plaintiff following receipt of what Thomas deemed threatening correspondence from plaintiff. Thomas later moved to another state and withdrew the charges. Six years later, in 2009, plaintiff filed a Special Civil Part complaint against Thomas, asserting malicious prosecution and intentional infliction of emotional distress. Plaintiff demanded $15,000 in damages, the Special Civil Part's jurisdictional limit.

In her decision, Judge Mizdol found many of the interrogatories propounded on Thomas were unrelated to plaintiff's action and, as such, "were

clearly intended to harass Thomas." Some notable examples cited by the judge include:

- Does your son still employ illegal immigrants at his company?

- How's Aunt Irene and Brita doin'? How many weeks did it take before Brita threw you right out? Do you feel that your behavior and dastardly deeds have caused to you have your wife, girlfriend, and nephew throw you out of their homes and lives? Are you still in denial?

- Do you feel like you've been marooned on a deserted island far away from your friends and family? Describe in detail why you feel this way and how it happened.

The trial judge dismissed plaintiff's complaint for reasons that are not relevant here. We reversed and remanded the matter for trial. Taffaro v. Taffaro, No. A-5307-09 (App. Div. Dec. 5, 2011). Judge Mizdol noted on remand, "[t]hirteen years after his uncle filed a police report against him [p]laintiff continue[d] litigation against his then-85-year-old uncle" and served additional "frivolous interrogatories." Ultimately, another judge dismissed plaintiff's action after trial.

Also in 2003, plaintiff and Vincent filed criminal cross-complaints in municipal court following an argument at a bar in Ridgefield. Plaintiff was convicted of harassment; Vincent was acquitted of unspecified charges. In

10

2010, plaintiff filed a complaint alleging "felony perjury" against Scott Bartone, a witness who testified during the municipal court case. After dismissing the complaint, plaintiff refiled the lawsuit against Bartone and added an allegation against the bar. The trial court dismissed plaintiff's complaint on the defendants' unopposed motion to dismiss, plaintiff appealed, and we affirmed. Taffaro v. Colonial Bar, No. A-1997-10 (App. Div. Dec. 23, 2011).

In 2007, plaintiff filed a request under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, with the Ridgefield Building Department "seeking the complete building permit file" for Susan's residence. In his application, plaintiff falsely certified he was not convicted of an indictable offense. Plaintiff was charged with false swearing, the charge was downgraded to a disorderly persons offense, and he was acquitted by the municipal court. Plaintiff's ensuing complaint against the Borough of Ridgefield and its mayor, asserting malicious prosecution and other charges, was removed to federal court and dismissed on summary judgment.

In 2012, plaintiff filed a Special Civil complaint against Susan, asserting claims for conversion, invasion of privacy, and negligent and intentional infliction of emotional distress. Plaintiff claimed Susan removed various notes

11

from his mother's grave.  Plaintiff's complaint was dismissed on summary judgment.

## C.  The Jewelry Case

In her November 16, 2022 decision, Judge Mizdol also summarized the allegations and events concerning the present actions.  The judge noted in July 2020, plaintiff filed a complaint and jury demand in the jewelry case, asserting claims for theft, and negligent and intentional infliction of emotional distress against defendant.  Plaintiff asserted he gave defendant jewelry valued at $1,709.64 to weigh and return to him, but defendant melted the jewelry "without his consent and offered him $880 for the value of the melted jewelry."

In her counseled answer, defendant asserted she never met plaintiff and never conducted business with him.  Defendant asserted plaintiff's complaint was frivolous.

During the course of discovery, plaintiff moved to compel answers to interrogatories.  Among other inquires, plaintiff asked, verbatim:

- Has the Defendant ever lied in any Answer while being sued in a prior civil matter?  Would the written and certified lies that you presented in your Answer to this matter be your first counts of felony perjury . . . committed?

- Are you currently on any medication? If so, what?  What is/are the dosage amount(s)?

Judge Mizdol found in the months that followed, among other acts, plaintiff withdrew his motion to compel; criticized defendant for failing to settle the matter; threatened to "warn every member of the gym," where he claimed both parties were members, "about what she did to [him], just for starters"; accused defendant and Judge Joseph G. Monaghan "of neglect, disobedience, and abuse"; filed another motion to compel "responsive" answers to interrogatories and admissions; and accused defendant and her attorney of perjury and contempt. Plaintiff also subpoenaed Susan, Vincent, Ng, Portela, and Bartone to testify at trial.

Trial was scheduled for July 21, 2022, before Judge Robert C. Wilson.[4] In March 2022, defense counsel notified plaintiff via correspondence that defendant intended to request the court take judicial notice of eighteen civil, criminal, and bankruptcy matters in which plaintiff was a party and "additional evidence," including text messages of two individuals defendant intended to call as trial witnesses. There is no indication in the letter that defendant intended to call any of the parties named in those matters as witnesses in the jewelry case.

Two weeks prior to trial, Susan and Vincent sent a letter to Judge Wilson advising they had no knowledge of the jewelry case and the orders prohibited

---

[4] Judge Wilson has since retired from the Judiciary.

A-1357-22

plaintiff from contacting them. Claiming the subpoenas constituted "continual harassment from [plaintiff]," Susan and Vincent asked to be excused from testifying at trial.

Bartone similarly sought to be excused as a trial witness. In his letter to Judge Wilson, Bartone stated he did not know defendant and did not have contact with plaintiff "since 2010/2011 when [plaintiff] tried to sue [him] in civil court." Bartone asserted, plaintiff "has a history of using the court system to harass [him]."

Ng formally moved to quash the subpoena. In his opposition, plaintiff accused Ng of committing perjury during his contempt trial.

In her November 16, 2022 decision, Judge Mizdol noted plaintiff claimed he "intend[ed] to use the testimony of his subpoenaed witnesses to validate his good character and credibility." Judge Mizdol found to the contrary and, regardless, plaintiff would not be permitted to present testimony about his good character in this action where he asserted defendant melted his jewelry without his consent.

On July 21, 2022, the parties appeared for a virtual trial before Judge Wilson. During the calendar call, plaintiff's microphone was muted, but he gestured that he was ready. That same day, the case was recalled for trial another

two times; both times plaintiff's microphone remained muted. Finding plaintiff failed to unmute his microphone, Judge Wilson concluded plaintiff failed to appear at trial and dismissed the case without prejudice. Notably, however, on August 23, 2022, Judge Joseph G. Monaghan granted plaintiff's motion to vacate the dismissal.

Thereafter, on October 5, 2022, Portela sent correspondence to Judge Monaghan claiming he had no knowledge of plaintiff's action, had no contact with plaintiff for more than ten years, and did not know defendant. Portela asserted it was odd that plaintiff wanted him "to testify on his behalf against a defendant that [Portela had] never met."

Days later, on October 11, 2022, plaintiff filed a "Motion to Restore All My Witnesses that Judge Robert C. Wilson Let Escape (Audio Problems!)." Although plaintiff acknowledged court orders prohibited his contact with some of his subpoenaed witnesses, plaintiff claimed the witnesses were necessary for trial. Plaintiff also claimed, without supporting certifications or documentation, "[i]t was confirmed to be the court's audio that failed as [he] . . . appeared numerous times before and after this dismissal with no issues."

Also on October 11, 2022, plaintiff filed a "Motion to Complete Edited Case Jacket." Plaintiff asserted many of the documents he filed were not

"scanned into the case jacket." Plaintiff claimed, "[t]his amounts to Evidence Tampering ([N.J.S.A.] 2C:28-6) (concealing documents in a judicial proceeding) and Official Misconduct ([N.J.S.A.] 2C:30-2)."

Shortly thereafter, on October 17, 2022, plaintiff filed a "Motion for a Temporary Stay Due to Several Unresolved Motions and Six Suppressed Witnesses." Plaintiff asserted, as Judge Mizdol noted in her decision, "Judge . . . Wilson created an escape for corrupt and very powerful public servant Susan . . . and her perjurers to slither through. He used a pathetic excuse to protect them from testifying."

We glean from the record the jewelry case trial was scheduled for October 18, 2022. However, the case was dismissed for plaintiff's failure to appear at the calendar call.

On October 28, 2022, Judge Monaghan denied plaintiff's motion to stay, and denied without prejudice plaintiff's motion to "restore" his witnesses and complete the edited jacket, subject to plaintiff moving to restore the complaint. Plaintiff moved to vacate the dismissal on October 28, 2022.

Pertinent to this appeal, on November 1, 2022, Judge Monaghan denied with prejudice plaintiff's motion to restore his witnesses. In a three-page rider annexed to the order, the judge found the "belligerent nature of the caption of

16

the instant motion" evinced its lack of merit. Citing plaintiff's "litigation and criminal history," the judge concluded:

> It is apparent that the five subpoenas submitted by [p]laintiff are intended merely to harass and inconvenience the subpoenaed parties; [p]laintiff has made no showing that any of the subpoenaed parties have any knowledge of the melted jewelry. Further, two of the subpoenaed parties, Susan and Vincent . . . have "no[-]contact orders" in place which prevent [p]laintiff from communicating with them in any form. This matter has been ongoing for over two years and has involved the filing of a considerable number of motions. The instant matter has not only proven to be a waste of judicial resources, but a blatant scheme to further harass those subpoenaed for a cause of action which is entirely fallacious.
>
> This [c]ourt will not be the avenue for harassment of parties protected by restraining orders and shall sanction any further transgressions by [p]laintiff, if so moved.

In her November 16, 2022 decision, Judge Mizdol noted Judge Monaghan reiterated his earlier finding that on the July 21, 2022 trial date, plaintiff "intentionally muted his audio in an attempt to force a rescheduling of the trial date and force his subpoenaed witnesses to reappear at a later date as a form of continued harassment." Judge Mizdol therefore considered the jewelry case dismissed with prejudice.

A-1357-22

Two days after Judge Mizdol issued the November 16, 2022 litigation injunction, Judge Wilson entered the November 18, 2022 order granting defendant's motion to dismiss the complaint. The handwritten notation at the bottom of the order states, "See Judge Mizdol's Decision of 11/16/22."

D.  The Defamation Case

Meanwhile, in August 2021, plaintiff filed a complaint and jury demand against defendant asserting claims for defamation, theft, intentional and negligent infliction of emotional distress, and false light. Plaintiff asserted in response to his jewelry complaint, defendant "retaliated by filing a frivolous" counterclaim and "abus[ing] the legal system by using defamation and perjury to get away with the [t]heft . . . therefore, digging a deeper hole for herself." Plaintiff demanded $15,000 in compensatory and punitive damages. Defendant answered the complaint and filed a counterclaim, asserting plaintiff's lawsuit was frivolous as she never met him or conducted any business with him.

In the months that followed, plaintiff propounded on defendant interrogatories; moved to compel answers; and failed to appear for trial on April 12, 2022, resulting in dismissal of his complaint without prejudice. On June 24, 2022, Judge Monaghan vacated the dismissal. On July 29, 2022, another judge denied plaintiff's motion to compel answers to interrogatories. In August 2022,

18

plaintiff moved to reconsider the July 29, 2022 order. The following month, plaintiff filed a "Motion for a Temporary Stay Due to Incomplete Discovery, Unresolved Motions, Suppressed Witnesses, and Lack of Fundamental Fairness."

On September 20, 2022, plaintiff's action was dismissed without prejudice for failure to appear at trial. As Judge Mizdol noted in her November 16, 2022 decision, in his ensuing motion to vacate dismissal of his complaint, plaintiff set forth no reasons for his failure to appear. Instead, he cast blame on Judges Wilson and Monaghan.

Ultimately, on November 14, 2022, Judge Wilson denied plaintiff's motion to vacate the dismissal. In his opinion, Judge Wilson recounted plaintiff's litigation history and found in the jewelry and defamation cases, plaintiff expended more than one year "harassing [d]efendant with irrelevant discovery requests" and sought three adjournments of the trial date. Noting the jewelry case was dismissed with prejudice because plaintiff "us[ed] it as an avenue to harass [d]efendant and various others" via subpoenas, Judge Wilson concluded the allegations in the defamation matter were moot.

## II.

Against that protracted litigation background, we turn to the orders under review in both appeals.

### A.  Jewelry Case

#### 1.  November 16, 2022 order

In points VII, VIII, and IX, plaintiff raises overlapping challenges to Judge Mizdol's November 16, 2022 order.  Plaintiff argues Judge Mizdol erroneously:  analyzed the Rosenblum factors; overruled a prior assignment judge's 2012 order denying Ng's application to deem plaintiff a vexatious litigant under the collateral estoppel doctrine; based her decision on incomplete information; dismissed his complaints without hearing testimony; and made factual mistakes that command correction.  Plaintiff's contentions are unavailing.

We review orders imposing sanctions against litigants who file frivolous papers for abuse of discretion.  Parish v. Parish, 412 N.J. Super. 39, 51 (App. Div. 2010).  An assertion that a filing is frivolous may be reviewed by an assignment judge "with an understanding of the results of past litigation and similar allegations which have turned out to be frivolous." Rosenblum, 333 N.J. Super. at 391; see also R. 1:33-4(a).  When issuing a sanction order for frivolous

litigation under <u>Rosenblum</u>, 333 N.J. Super. at 396-97, a judge must: evaluate "the volume and disposition of the cases" filed by the litigant; "address the allegations in the present complaints"; "give reasons for [the] conclusion that the complaints may not be filed"; "be assured that more traditional sanctions will not protect against frivolous litigation"; and "review the new complaint to be assured that a meritorious claim is not suppressed." <u>See also</u> <u>Parish</u>, 412 N.J. Super. at 54.

Restrictions against a litigant's filing of prospective motions, such as Judge Mizdol's November 16, 2022 order, are appropriate in certain circumstances. <u>See</u> <u>D'Amore v. D'Amore</u>, 186 N.J. Super. 525, 530 (App. Div. 1982) (holding a trial court has the power to enjoin prospective harassing litigation). "However, 'that power must be exercised consistently with the fundamental right of the public to access to the courts in order to secure adjudication of claims on their merits.'" <u>Rosenblum</u>, 333 N.J. Super. at 396 (quoting <u>D'Amore</u>, 186 N.J. Super. at 530). In reviewing whether a filing is frivolous, an assignment judge must "do more than conclude [a] plaintiff's prior complaints were frivolous. The [a]ssignment [j]udge must be assured that more traditional sanctions will not protect against frivolous litigation and must review

the new complaint to be assured that a meritorious claim is not suppressed." Ibid.

Having reviewed the record with these legal standards in view, we discern no reason to disturb the November 16, 2022 order. As detailed in Judge Mizdol's comprehensive written decision, plaintiff's protracted litigation history demonstrates a pattern of frivolous and meritless litigation designed to harass the parties and witnesses. The judge issued a well-reasoned opinion reviewing the constitutional and public policy implications of limiting plaintiff's filings, ultimately concluding that such an order was permissible and necessary pursuant to Rosenblum.

Nor are we persuaded by plaintiff's claim that collateral estoppel barred Judge Mizdol's order because her predecessor, Judge Peter E. Doyne,[5] declined to issue a litigation injunction against plaintiff in 2012. We glean from the record Ng moved for a litigation order in plaintiff's Special Civil Part case against him.[6] Although plaintiff included Judge Doyne's order in his 387-page appellate appendix, he failed to provide the transcript of the judge's oral decision

---

[5] Judge Doyne has since retired from the Judiciary.

[6] On appeal, we affirmed the trial court's dismissal of plaintiff's complaint against Ng pursuant to the litigation privilege. Taffaro v. Ng, No. A-1946-12 (App. Div. Dec. 8, 2014).

issued on October 12, 2012.  See R. 2:6-1(a)(1)(I).  In any event, Judge Mizdol's decision is grounded in more recent litigation involving different parties. Accordingly, collateral estoppel does not apply.  See In re Liquidation of Integrity Ins. Co./Celotex Asbestos Tr., 214 N.J. 51, 68 (2013) (reiterating "[n]otably, the court does not apply collateral estoppel when 'the transactions, although "similar in nature and close in time," did not involve the individual cases at issue' in the current litigation" (quoting In re McWhorter, 887 F.2d 1564, 1568 (11th Cir. 1989))).

We also discern no merit in plaintiff's contentions that Judge Mizdol's decision contains factual inaccuracies and omissions, particularly regarding her description of plaintiff's litigation history.  Plaintiff's claims consist of self-serving and unsupported statements, largely aimed at relitigating his prior history.  But plaintiff fails to negate Judge Mizdol's finding that his prior filings were in fact frivolous.

Moreover, we reject plaintiff's argument that Judge Mizdol erroneously dismissed his complaints without hearing testimony.  Citing the extensive litigation history, the judge found "[f]or the past two decades, [p]laintiff has tormented the lives of his family members and others whom he has decided to pester with incessant litigation . . . mak[ing] it abundantly clear that [p]laintiff

23

files suits for the purpose of harassing his victims." Live testimony was unnecessary to reach that conclusion. By way of analogy, in Rosenblum, we recognized the liberality required by our Rules of Court when construing a plaintiff's claims for relief under Rule 4:5-2, but we further declared, "that does not mean that the allegations cannot be reviewed by the [a]ssignment [j]udge with an understanding of the results of past litigation and similar allegations which have turned out to be frivolous, suggesting that the present complaint – particularly without detailed specificity – may well be the same." 333 N.J. Super. at 391.

## 2. November 18, 2022 order

We similarly reject plaintiff's challenges to the November 18, 2022 order, alluded to in point I, i.e., Judge Wilson dismissed his complaint without a hearing. As noted, the November 18 order was issued by Judge Wilson and relied on the reasons set forth by Judge Mizdol in her November 16 order.

In her decision, Judge Mizdol determined neither action had merit as the causes of action were "specious" or "non-cognizable." To arrive at this conclusion, Judge Mizdol cited plaintiff's complaint, defendant's answer, and the various motions filed during the pendency of the case. Although plaintiff does not expressly argue there were genuine issues of material fact precluding

24

the dismissal of his complaint with prejudice, because Judge Mizdol considered matters outside the four corners of the complaint, her decision is akin to a summary judgment dismissal. Our review is therefore de novo. See Comprehensive Neurosurgical, PC v. Valley Hosp., 257 N.J. 33, 71 (2024).

Our review of the record reveals, in his complaint, plaintiff asserted defendant "hoodwinked" him by asking plaintiff "to allow her to weigh three pieces of [his] gold jewelry in order to assess their value." Instead, the next day defendant allegedly told plaintiff she melted down his jewelry without his consent and the value was now $880. Plaintiff asserted the "true worth" of his jewelry was $1,709.64, and one item had "sentimental value" as it was "a gift from an old girlfriend." Plaintiff sought $15,000 in compensatory damages. As Judge Mizdol noted, in her answer and counterclaim, defendant averred she never met plaintiff nor conducted any business with him.

As Judge Mizdol further observed, to support his claim, plaintiff propounded thirty-five interrogatories and two sets of admissions, many of which "b[ore] no relation whatsoever to the alleged melted jewelry." Moreover, while plaintiff maintains he had witnesses and other evidence that supported his claim, in response to defendant's discovery, plaintiff only identified two

potential witnesses – Susan and Ng – both of whom assert they have no knowledge of the allegations. And plaintiff is not permitted to contact Susan.

Further, in plaintiff's responses to defendant's interrogatories, he claimed defendant "lied to [him] and snuck out the door with [his] jewelry," yet he included in his appendix a purported handwritten receipt from defendant. That document is a handwritten note with the address and phone number for "Pat Jewelry Creations," without any mention of jewelry received from plaintiff, a description of the work to be performed, or any other information that would support a claim that defendant converted or otherwise stole plaintiff's property.

Thus, based on our review of the record, we discern no error in Judge Mizdol's conclusion, "[t]he evidence is clear and convincing that, had plaintiff truly brought suit to recover the value of the melted jewelry, there would have been some proof to that claim" aside from "[p]laintiff's own contrived statements." Even if plaintiff had expressly argued genuine issues of fact precluded dismissal of his complaint, "[c]ompetent opposition [to summary judgment] requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Ord. Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005)).

### 3. November 1, 2022 order

In points IV and V, plaintiff argues Judge Wilson's denial of his motion deprived plaintiff of his ability to subpoena witnesses and was based on multiple factual errors. Plaintiff's argument is best considered as a challenge to a court's decision to quash a subpoena. Our review is therefore deferential. See Platkin v. Smith & Wesson Sales Co., 474 N.J. Super. 476, 489 (App. Div. 2023). That is because "[d]ecisions regarding 'discovery matters are upheld unless they constitute an abuse of discretion.'" Ibid. (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

Plaintiff argues Judge Wilson's decision violates Rule 1:9-1, which permits the court to issue subpoenas. However, under Rule 1:9-2, the court "may quash or modify [a] subpoena or notice if compliance would be unreasonable or oppressive."

We are satisfied Judge Wilson's decision is amply supported by the record. For example, Judge Wilson detailed plaintiff's prior criminal history and the resulting orders that prohibited contact with Susan and Vincent, whom he had subpoenaed in the jewelry case. As the judge noted, Susan and Vincent specifically asked to be excused from testifying in view of the "numerous no contact orders filed for their benefit." Judge Wilson further found Susan,

27

Vincent, and Ng advised the court they had no knowledge of plaintiff's allegations against defendant and the subpoenas were intended to harass them. Judge Wilson also noted "[t]here is no proffer of how the action relates to the five subpoenas that are the subject of [the] instant motion." Accordingly, he concluded the subpoenas "[we]re intended merely to harass and inconvenience the subpoenaed parties."

Under these circumstances, we discern no basis to conclude Judge Wilson abused his discretion in denying plaintiff's motion. Plaintiff subpoenaed five witnesses, none of whom had any relevant knowledge of the gravamen of his complaint and at least two of whom had no contact orders against him.

### 4. July 21, 2022 order

Little need be said regarding plaintiff's challenges to the July 21, 2022 order dismissing his complaint without prejudice for his failure to unmute his microphone and appear at trial. In essence, plaintiff argues he appeared for trial, but experienced audio problems on his computer and, as such, Judge Wilson should have explored other options, such as allowing him to dial-in or appear in person. Because Judge Monaghan vacated the July 21, 2022 order on August 23, 2022, plaintiff's argument is moot. See Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) ("An issue is 'moot' when the

decision sought in a matter, when rendered, can have no practical effect on the existing controversy." (quoting N.Y. Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, Div. of Tax'n, 6 N.J. Tax 575, 582 (Tax 1984))).

To the extent not specifically addressed, plaintiff's remaining contentions in the jewelry case lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

### B. The Defamation Case – November 14, 2022 order

In his rider to the November 14, 2022 order, Judge Wilson found plaintiff "provide[d] no reason whatsoever for his failure to appear for trial . . . on September 15, 2022."[7] After summarizing plaintiff's litigation history, the judge found:

> Via the instant matter and the jewelry case, [p]laintiff has spent the past year plus harassing [d]efendant with irrelevant discovery requests and has sought the postponement of three . . . trial dates in this matter. Plaintiff has indicated in several documents submitted to the [c]ourt that he is upset that this matter is moving quicker than the jewelry case. This is entirely due to the way [p]laintiff dragged out the jewelry case, including seeking the adjournment or outright failing to appear for eight trial dates, as well as filing several motions to compel discovery, all of which were denied or denied in part.

---

[7] We glean from the record the trial date was September 20, 2022. Accordingly, September 15, 2022 appears to be a scrivener's error.

Plaintiff has repeatedly stated that he refuses to try the instant matter until the jewelry case has concluded. This is presumably because [p]laintiff's cause of action in the instant matter stems solely from the [a]nswer filed by [d]efendant in the jewelry case, or potentially because he wants to preserve this avenue for harassment until he may no longer do so via the jewelry case. However, the [c]ourt dismissed the jewelry case with prejudice, as [p]laintiff had no intention of ever[] trying or settling the case and was merely using it as an avenue to harass [d]efendant and various others whom [p]laintiff had subpoenaed into the case. As such, this case is now without merit, and vacating the [c]ourt's prior dismissal will do nothing more than provide [p]laintiff with, an avenue to harass [d]efendant further and subpoena parties into a matter which has no merit whatsoever.

In his merits brief, plaintiff advances many of the same objections to Judge Wilson's rider accompanying the November 14, 2022 order as raised against the judges who issued the orders in the jewelry case. Plaintiff argues: he was entitled to a trial on the merits of his complaint; Judge Wilson's decision contained factual errors; Judge Wilson deprived him of his right to subpoena witnesses; because the jewelry case was filed first that matter should have been listed for trial prior to the defamation case; and the judge erroneously dismissed his case while his motions to enforce a fee waiver and for a stay were pending.

Having considered plaintiff's contentions in view of the applicable law, we conclude they lack sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by Judge Wilson in his cogent decision in view of the protracted litigation history and the procedural posture of the present matter.

### C. Cumulative Errors

Lastly, we reject plaintiff's contentions, raised in both appeals, that the cumulative effect of the motion judges' alleged errors warrants reversal. Because there was no individual error in either case requiring reversal, there was no cumulative error. See Comprehensive Neurosurgical, 257 N.J. at 85-86 (recognizing under a cumulative analysis appellate courts "do not merely count the number of mistakes 'because even a large number of errors, if inconsequential, may not operate to create an injustice'" (quoting Torres v. Pabon, 225 N.J. 167, 191 (2015))).

To the extent not specifically addressed, plaintiff's remaining contentions in the defamation case lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31